CLARKSON, J., dissents.
Civil action to recover damage for the death of plaintiff's intestate, Sue Gurley, which occurred in the town of Lincolnton on Christmas morning, 1932, and is alleged to have been caused by the wrongful act, neglect, or default of the defendant.
The facts are these: The deceased, a school girl 17 years of age, Guy Barringer, age 19 or 20, James Haney and Miss Hayes left Hickory between 3:00 and 3:30 o'clock in the morning and reached Lincolnton about 5:00 a.m. en route to Shelby, and thence to York, S.C., where Haney and Miss Hayes were to be married. They were riding in a five-passenger 1928 Pontiac sedan. Barringer was driving and Miss Gurley was on the front seat with him. Haney and his fiancee occupied the rear seat. The trip was the result of a prearranged plan, the automobile having been secured for the purpose from Barringer's father and all four were up the entire night, dining dancing and preparing for the journey. None had had any sleep. There was no drinking in the party.
The night was dark; the weather inclement , foggy and drizzling rain. The lights on the automobile were dim, did not show very far in front, shone right down on the road. Barringer was familiar with the road leading out of Lincolnton to Shelby, had spent a good part of the summer there, but had never driven a car over it. They reached Lincolnton before day, drove around the square and out Church Street to *Page 284 
Mill Street, the old Lincolnton-Shelby highway prior to the construction of the new Lincolnton-Shelby road. Haney remarked he thought they were on the wrong road; Barringer replied he knew that was the Shelby road when he was there: "I knew they had a new road built and I thought it had been extended straight on."
Church Street is paved with sheet asphalt and is about eighteen feet wide. It comes into Mill Street at right angles, but does not cross it. Mill Street is a paved highway going in the direction of Shelby. It is paved in the opposite direction only a short distance — about four feet. The paving at the corner of the intersection of Church and Mills streets had been widened eight or ten feet on the inside of the curve in addition to the regular eighteen feet, so as to make the turn easier. It had been in this condition for seven years. Church Street is practically level as it goes into the intersection.
Directly across from where Church Street intersects with Mill Street, and on the west side of Mill Street, there is a dirt shoulder "of possibly 6 or 8 feet beyond the west edge of the hard surface, which had been grassed — the usual six-foot shoulder that you find on roads." There was other evidence that the dirt shoulder was only four feet in width. Beyond this, there is a declivity, fill, or embankment, which slopes gradually from the shoulder of the road to a depth of from 6 to 10 or 12 feet.
Barringer failed to turn into Mill Street, ran directly across it, over the shoulder, down the embankment, into the fill, which was wet and soggy, turned the car over, and Miss Gurley was killed.
Barringer testified that he was traveling westward along Church Street at a rate of from fifteen to twenty miles an hour; that he did not observe the road turned to the left until he crossed the hard-surfaced part of Mill Street, too late to avoid going down the embankment; that while the lights on Main Street were burning, there was no light at this intersection; nor were there any guard rails, barriers, posts, or signs to warn travelers of the unguarded ravine; and further, on cross-examination: "There was not anything to keep a man from following this pavement, and there wasn't anything there to tell us to turn. . . . There wasn't anything to keep me from following it if I was watching the road. I was driving this car no faster than 15 or 20 miles, and I just drove down that embankment. I did not tell Mr. Nicholson that I was perfectly familiar with that road, but that I got to the turning-place quicker than I thought."
There was also evidence introduced to show that four or five other cars, within the last several years, had failed to follow the paved road and had gone over this embankment, some in the daytime, some in the nighttime, but no injuries of any consequence had hitherto occurred. *Page 285 
The city electrician testified that there was one street light in the neighborhood of this intersection. "It was not burning at 5 o'clock Christmas morning, 1932. . . . We cut off the lights in the residential sections at 12:30 or 1:00 o'clock, but on the main street they burn all night."
Motion to nonsuit under Hinsdale Act, C. S., 567; overruled; exception.
The defendant offered no evidence.
The case was submitted to the jury on the issues of negligence and damages, and resulted in a verdict of $10,000 for the plaintiff.
From the judgment entered thereon the defendant appeals, assigning errors, the principal one being directed to the refusal of the court to grant the defendant's motion for judgment as of nonsuit.
after stating the case: It is not debated on brief, nor was it mooted on the hearing, whether plaintiff's intestate and her companions had embarked upon a joint enterprise, or joint venture, so as to render the contributory negligence of the driver imputable to the other occupants of the car, hence we omit any consideration of this view of the matter. For history, philosophy, definition, and application of the doctrine of joint enterprise, see: Potter v. Florida Motor Lines, 57 F.2d 313 (which contains a clear exposition of the principles underlying the doctrine);Carlson v. Erie R. Co., 305 Pa., 431, 158 A. 163, 80 A.L.R., 308 (with annotation); Campbell v. Campbell, 104 Vt. 468, 162 A. 379, 85 A.L.R., 626 (with annotation); Keiswetter v. Rubenstein, 235 Mich. 36,209 N.W. 154, 48 A.L.R., 1049 (with annotation); Charnock v. RefrigeratingCo., 202 N.C. 105, 161 S.E. 707; Butner v. Whitlow, 201 N.C. 749,161 S.E. 389; Albritton v. Hill, 190 N.C. 429, 130 S.E. 5; Williams v. R.R., 187 N.C. 348, 121 S.E. 608 (concurring opinion); Pusey v. R. R.,181 N.C. 137, 106 S.E. 452; Eubanks v. Kielsmeier, 171 Wn. 484,18 P.2d 48, as reported in 34 N.C.C.A., 388, with full annotation upon the subject.
And further, by way of elimination, it is not alleged that there was any defect, excavation, or obstruction, in the street itself, which had been permitted to remain there for an unreasonable length of time, without signals or lights to warn the traveling public, as was the case in Pickettv. Railroad and the Town of Newton, 200 N.C. 750, 158 S.E. 398; nor that the street abruptly terminated in a river without barricade or lights, as was the case in Willis v. New Bern, 191 N.C. 507, 132 S.E. 286. *Page 286 
The gravamen of the complaint is, that the elbow or sharp turn in the highway created by the intersection of Church and Mill streets is immediately adjacent to a dangerous declivity which calls for lights, signs, railing, or barrier to make it safe for travel in the exercise of ordinary care, and that the failure on the part of the municipality to guard or to warn the public of such danger is negligence, rendering it liable in damages for injuries to travelers which proximately result from a breach of its duty in this respect. Speas v. Greensboro, 204 N.C. 239,167 S.E. 807.
The rule applicable is stated in 13 R.C.L., 421, as follows: "It is well settled that it is the duty of a municipal or quasi municipal corporation to erect railings or barriers along the highway at places where they are necessary to make the same safe and convenient for travelers in the use of ordinary care, and that it is liable for injuries to travelers resulting from a breach of its duty in this regard. This is true though the danger arises from structures or excavations outside of the highway, and on the land of adjoining owners, when they are in the general direction of travel upon the highway. Whether or not a railing or barrier is necessary in a given case depends largely upon the circumstances of the particular locality in reference to which the question arises. Among the facts material to be considered are the character and amount of travel, the character and extent of the slope or descent of the bank, the direction of the road at the place, the length of the portion claimed to require a railing, whether the danger is concealed or obvious, and the extent of the injury likely to occur therefrom. A number of courts have laid down the rule that the danger must be of an unusual character and one that exposes travelers to unusual hazards, such as bridges, declivities, excavations, steep banks, or deep water."
Our own decisions are accordant with this statement. Willis v. New Bern,supra, and cases there assembled.
It is further established by the decisions in this jurisdiction that a municipality is not held to the liability of an insurer of the safety of its streets, but only to the exercise of ordinary care and due diligence to see that they are safe for travel. Alexander v. Statesville, 165 N.C. 527,81 S.E. 763; Seagraves v. Winston, 170 N.C. 618, 87 S.E. 507;Fitzgerald v. Concord, 140 N.C. 110, 52 S.E. 309.
With respect to the duty of notification or fortification against danger which a municipality owes to those using its streets, it has often been said that such duty is to use ordinary care to warn and to protect persons against injury who are themselves exercising ordinary care for their own safety. It is the duty of a municipality to place some guard at dangerous and exposed places, where the happening of accidents from the failure to place guards may be reasonably anticipated. In relation to defects or obstructions in the streets themselves a responsibility may *Page 287 
arise somewhat different from a case involving danger outside of the traveled way. In the latter case, the question of negligence becomes one of reasonably anticipated consequences, and the duty is to use such means as may be necessary to prevent those consequences. Watkins' Admr. v. City ofCatlettsburg, 243 Ky. 197, 47 S.W.2d 1032. The chief difficulty arises in determining whether, in a particular case, the danger is sufficiently imminent to require guards, signs, or barriers, and naturally each case must be decided upon its own state of facts. No hard and fast rule can be laid down that will apply alike to all conditions. Shea v. Townof Whitman, 197 Mass. 374, 83 N.E. 1096.
It was the judgment of those having this particular highway in charge that the situation was not such as to call for signs or guards, as the intersection had been widened 8 or 10 feet opposite the gulch side of Mill Street, making the width of the hard surface at the point of injury something over 30 feet. In addition to this, there was the dirt shoulder of from 4 to 6 or 8 feet, and then the gradual descent of the embankment. The duty required of the defendant was that of ordinary care. A searching investigation of the record leaves us with the impression that the evidence is wanting in sufficiency to warrant the inference that this duty was breached to the injury of plaintiff's intestate. Blackwelder v. Concord,205 N.C. 792, 172 S.E. 392; Briglia v. City of St. Paul, 134 Minn. 97.
It further appears that the immediate cause of plaintiff's intestate's unfortunate death was the negligence of Guy Barringer, the driver of the car, and not that of the defendant. This doctrine of insulating the conduct of one, even when it amounts to inactive negligence, by the intervention of the active negligence of a responsible third party, has been applied, in a number of cases. Baker v. R. R., 205 N.C. 329, 171 S.E. 342; Hinnant v.R. R., 202 N.C. 489, 163 S.E. 555; Herman v. R. R., 197 N.C. 718,150 S.E. 361.
Speaking to the subject in his valuable work on Negligence (sec. 134), Mr. Wharton very pertinently says: "Supposing that if it had not been for the intervention of a responsible third party the defendant's negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative, for the general reason that causal connection between negligence and damage is broken by the interposition of independent responsible human action. I am negligent on a particular subject-matter. Another person, moving independently, comes in, and either negligently or maliciously so acts as to make my negligence injurious to a third person. If so, the person so intervening acts as a nonconductor, and insulates my negligence, so that I cannot be sued for the mischief which the person so intervening directly produces. He is the one who is liable to the person injured." *Page 288 
The same rule announced by Mr. Justice Strong in R. R. v.Kellogg, 94 U.S. 469, regarded as sound in principle and workable in practice, has been quoted with approval in a number of our decisions. He says: "The question always is, Was there an unbroken connection between the wrongful act and the injury — a continuous operation? Did the facts constitute a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act amounting to a wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence, or wrongful act, and that it ought to have been foreseen in the light of attending circumstances."
It follows, therefore, that the demurrer to the evidence should have been sustained.
Reversed.