Carlson, Appellant, v. Erie R. R. Co.

432

Argued May 25, 1931. Before FRAZER, C. J., WALL-
ING, SIMPSON, KEPHART, SCHAFFER and MAXEY, JJ.

*V. G. Lamb,* of *Anderson & Lamb* and *Arthur L.
Bates,* for appellant.—It has been decided that under
circumstances which require much care, as at a popu-
lous crossing, the fact that a car ran 100 feet after a
collision is sufficient evidence of defendant's negligence
to carry the case to the jury: Kuhns v. Traction Co.,
290 Pa. 303; King v. Ry., 242 Pa. 497; Howard Express
Co. v. Wile, 64 Pa. 201.

Decedent, Carlson, was not engaged with White, the
driver, in a common purpose and the clear presumption
is that he did his duty: Alperdt v. Paige, 292 Pa. 1;
Johnson v. Hetrick, 300 Pa. 225.

The clear presumption in favor of plaintiff is not overcome: Unger v. R. R., 217 Pa. 106; Hugo v. R. R., 238 Pa. 594; Sullivan v. R. R., 175 Pa. 361.

*Albert L. Thomas,* of *Thomas & Kieborth,* for appellee.—The right of the carrier at grade crossings is superior to that of the highway traveler, and the latter must yield the right-of-way: Newhard v. R. R., 153 Pa. 417; Custer v. R. R., 206 Pa. 529; Craft v. Hines, 272 Pa. 499; Paul v. Ry., 231 Pa. 338; Cubitt v. R. R., 278 Pa. 366; Galvin v. Kreider, 293 Pa. 395.

Plaintiff is not precluded from recovery on account of her decedent's negligence: P. R. R. v. Mooney, 126 Pa. 244; Schmidt v. R. R. Co., 244 Pa. 205; Kemmler v. R. R., 265 Pa. 212; Miller v. R. R., 256 Pa. 142; Lessig v. Transit & L. Co., 270 Pa. 299; O'Neill v. Reading Co., 296 Pa. 319.

OPINION BY MR. CHIEF JUSTICE FRAZER, November 23, 1931:

This case was heard on reargument ordered before a full bench. The action, brought by a widow on behalf of herself and two minor children, is for recovery of damages for the death of her husband who was killed when the automobile in which he was riding was struck at a grade crossing by defendant's locomotive. No affidavit of defense was filed. At the conclusion of plaintiff's testimony, the trial court granted a compulsory nonsuit. The court below was of opinion that the negligence of the owner and driver of the automobile in failing to "stop, look and listen" (see Martin v. P. R. R. Co., 265 Pa. 283, 286) before crossing the defendant's railroad track, was imputable to Wilmer T. Carlson, plaintiff's decedent, on the theory that both were engaged in a common-purpose enterprise. This is the principal question before us. From the order refusing to remove the nonsuit, plaintiff has appealed. The situation presented is as follows:

On the morning of November 11, 1929, at about 6:15, Wilmer T. Carlson was killed at a grade crossing at Mercer Street in the City of Meadville by the collision of defendant's engine with an automobile in which he was riding. There were three men in the car, a Chrysler sedan, at the time of the accident: Otis White, owner and driver, Carlson, deceased, who sat in the front seat with White, and O. H. Beers, plaintiff's principal witness, who sat in the rear seat at the right side. White was killed in the accident also. In addition to Beers, plaintiff produced three eyewitnesses of the accident. The testimony of these four people was substantially the same on the principal facts and was to the following effect: The road which approaches the track is on grade, and, at this point, a watchman's shanty obstructs the view of the tracks so completely that a clear view in the direction from which defendant's locomotive approached could be had only when "the front end of [the] car is on the track." As the front wheels of the car had cleared the second rail of the first track, the tender of defendant's westbound locomotive, which was backing at the time, struck the automobile and carried it for a distance of between two hundred and two hundred fifty feet. Beers was the sole survivor of the three persons in the car. The testimony showed the crossing to be in a populous neighborhood in which there was heavy traffic even in the early morning hours. Persons driving to their work at several near-by iron factories added to the traffic coming from country districts to Meadville at this point on the highway. Defendant railroad company maintained an automatic electric warning bell and safety gates at the crossing; a sign posted there informed the public that a watchman was on duty from 6 A. M. to 12 P. M. The testimony is unanimous on the fact that at the time of the accident the safety gates were not lowered, the train approaching at a speed of from twenty to twenty-five miles an hour. It was dark, the crossing was not well lighted, there was no lookout

employee riding the tender nor were there any lights on the engine, no one heard the train whistle or its bell ring, the automatic warning bell at the crossing, although it was heard to ring twice, did not ring loudly, and the watchman supposed to begin his duties at 6 A. M. was absent and did not arrive until after the accident which, as above stated, happened at 6 : 15 A. M. Upon this state of facts we agree with the statement by the court below that it would have been warranted in submitting "the question of defendant's negligence to the jury for determination." Plaintiff's witnesses agreed that the car driven by Otis White approached' the crossing at a very low speed,—not more than five miles an hour,—and, although it did not stop, was apparently about to do so. All occupants of the car were familiar with this crossing and had driven across it twice a week for a considerable period of time. At the time of the accident, the three men were enroute to the scene of their work about two miles west of Diamond, Pa., on the Titusville Road, east of the City of Meadville.

The question of whether or not the court below was correct in its assumption that plaintiff's decedent, Carlson, was engaged in a common enterprise with the driver of the car, Otis White, can be resolved only by an examination of the relationship existing between these three men and consideration of what relationships this court has held will, in negligence cases, sustain the theory of common purpose. The evidence showed the three men were friends and neighbors, all lived in Linesville and were employees of Nelson White, a contractor, who was the son of Otis White, driver and owner of the car. Although all three were employed on the same operation for the same contractor, and although Carlson and Beers had been hired by Nelson White, through the agency of his father, Otis White, each did separate work: Beers operated a gasoline shovel, Carlson drove a truck and Otis White, the hiring agent, performed

other work. No relation of employer and employee existed between Otis White, the driver of the car, and Carlson. The checks in payment of the work which Carlson did were signed "N. J. White per O. B. White." The three men drove from Linesville to their work each Monday morning, remained for the week at the construction camp and returned home for week ends. We cannot accept appellant's contention that these rides when taken in Otis White's car were part of the compensation passing to Carlson, for the contract of employment under which Beers was hired and which was presumably the same as that under which Carlson was hired did not include any more definite transportation arrangement than that Otis White, Beers testified, "Told me I could ride over with him." When asked the question "He told you he would see that you were taken over there, didn't he?" Beers did not answer categorically but said, "Yes, in a way." There is testimony that Carlson sometimes drove the men over in his car and the compensation paid by Nelson White, the contractor, was no more nor less than when the men went to the scene of their work in O. B. White's car. Beers testified he had not paid and it was his belief that Carlson never paid Otis White anything for transportation from Linesville to the scene of their work. A reading of the whole record shows clearly that each of the three men was employed to do a particular kind of work about the construction job and that the ride in Otis White's automobile the morning of the accident was merely a gratuitous accommodation extended to Carlson and Beers, neither of whom had any part in the management of the car.

We deem unnecessary a discussion of the theory underlying the common purpose doctrine as enunciated in Dunlap v. P. R. T. Co., 248 Pa. 130, and the host of cases which have followed it. Briefly stated, "In determining whether one suing for injuries occupied the position of an actor in a joint enterprise, the better view......is that, to fix this status on a passenger in an automobile

which meets with an accident, not only must there exist, between the injured person and the participant alleged as responsible for the accident, a common purpose to be served in the use of the car, but there must also be evidence which would warrant a finding that such injured person had some right to a 'voice in the control, management or direction of the vehicle' ": Johnson v. Hetrick, 300 Pa. 225, 230-31, and cases there cited. "Where the action is brought against a third party, the rule is that the negligence of one member of the joint enterprise, within the scope of that enterprise, will be imputed to the other": Johnson v. Hetrick, supra, page 233.

In the present case, the single question before us is: Was Carlson engaged in a joint enterprise with the driver of the automobile at the time of the accident? It is obvious that the men had not reached the point where their work for the day began and the ride from Linesville had no necessary connection, in law, with the separate services, each of a different nature, which each of the three men was employed to render to the contractor. Their duties prescribed by their contracts of employment with Nelson White did not contemplate any service together for their employer in an automobile, as was the case in Dunlap v. P. R. T. Co., supra, where a constable and a deputy constable were, in the course of their official duties, out in an automobile making distress for rent; or like McLaughlin v. Pittsburgh Ry. Co., 252 Pa. 32, 34, where one who had employed a doctor to accompany her mother, who was ill, home from a distant city, was riding with the doctor and the driver of the car on the return trip; or similar to Hoffman v. Pittsburgh & Lake Erie R. R. Co., 278 Pa. 246, where the driver of an ice wagon and his helper were engaged in delivering ice; or Kelly v. Northampton, etc., Society, 286 Pa. 97, where the driver for an independent contractor, accompanied by his assistant, was engaged in hauling properties from a fair ground; or Campagna v. Lyles, 298 Pa. 352, where an employee was riding

with his employer in the course of his employment. Furthermore, the hour at which they were to begin work for Nelson White had not arrived. As we said in Alperdt v. Paige, 292 Pa. 1, 6, "Something more must be shown than that the parties were riding together." So, in Joseph v. Pittsburgh & W. Va. Ry., 294 Pa. 315, where plaintiff wished to reach the same point to which the driver of the automobile was traveling, and the latter offered to take him along, the mere fact that the two parties were riding together toward the same destination was not sufficient to effect a common-purpose enterprise. As we there said (page 319), "In itself, the mere acceptance of an invitation to ride for pleasure (or as an accommodation) does not ordinarily constitute a joint enterprise because there is no equal right in governing the conduct of the undertaking." The present case is analogous to Johnson v. Hetrick, supra, where a mine foreman and a mine blacksmith were in the habit of riding to and from work together in a car owned and driven by the latter. We there observed that "whatever position of subordination one of them might have occupied to the other when in the mine had ceased" and was not in effect at the time of the accident. In the present case, although the driver of the car was the hiring agent for the contractor and Carlson was one of the persons hired, that obviously does not create master and servant relation between the two.

The cases of Eline v. Western Md. Ry. Co., 262 Pa. 33, 36, Martin v. P. R. R. Co., 265 Pa. 282, 284, and Hilton v. Blose, 297 Pa. 458, 460, in all of which the drivers of the cars and the injured parties were on joint pleasure trips amounting to common enterprises, obviously have no bearing upon the present situation. Here, the three men were traveling to the same destination to their work, and one of their number, as an accommodation, invited the other two to ride with him. Although it is true that the ride benefited Carlson, there is nothing in that benefit necessarily mutually shared with the benefit

to Otis White. Had they been joint contractors all working on the same contract, there would have been a necessary mutuality in the benefit derived by them in going to the scene of activity. But that is not this case, for here they were hired severally to work at separate tasks which did not, so far as we know, even have so mutual an aspect that, should one of them have quit work, it would have in any way affected the work of the others. To draw a concrete analogy: They were not, in their work, like the poles of a wigwam, necessarily leaning one upon the other, but were like the separate pillars of a porch, all supported by a common foundation and capable of independent replacement without disturbance to the others. Each was answerable to the common contractor when his work day began, but there existed no common enterprise among them, only a common place of work and contractor to work for,—i. e., a common destination, which is not tantamount to a common purpose: Alperdt v. Paige, supra, 6.

Otis White, by inviting Carlson to ride with him, placed his passenger in a position, upon acceptance of this gratuity, that the latter neither gained any right in the control or management of the car nor changed, by going to the same destination, what otherwise could not be considered a joint enterprise. The fact that Carlson had ridden with Otis White in the latter's car on previous occasions does not alter the legal aspect of the relation between them, which was neither that of master and servant, coservants engaged in an employment of a mutual nature, principal and agent, nor participants in a joint enterprise. See Johnson v. Hetrick, supra, page 232. Carlson was an invited guest, nothing more, and in that aspect of this case it is analogous to the situation presented in Nutt v. P. R. R. Co., 281 Pa. 372, 376; Johnson v. P. R. R. Co., 283 Pa. 481, 482; Kilpatrick v. P. R. T. Co., 290 Pa. 288, 294; Schlossstein v. Bernstein, 293 Pa. 245, 249; Simrell v. Eschenbach, 303 Pa. 156, 161. There is nothing in the evidence to remove it,

as matter of law, into the common-purpose field as we have defined that field. The element of legal mutuality is lacking. The trial judge was in error when he refused to remove the compulsory nonsuit.

The judgment is reversed and a venire facias de novo awarded.