Baugh et vir., Appellants, *v.* McCallum et al.

Argued May 9, 1940.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and
HIRT, JJ.

*Edward O. Spotts, Jr.,* with him *David S. Polkovitz,* for appellants.

*John G. Koedel,* with him *Armin H. Friedman,* for appellee.

OPINION BY RHODES, J., June 24, 1940:

This is an action in trespass brought by plaintiffs, who are husband and wife, against five defendants, for personal injuries alleged to have been sustained by wife plaintiff as the result of an automobile accident. The jury rendered a verdict in favor of defendants. Plaintiffs' motion for a new trial was refused, whereupon this appeal was taken by them from the judgment entered on the verdict.

On April 26, 1937, about 11 p. m., wife plaintiff was a passenger in the front seat of her husband's automobile which was being operated at the time by him in the city of McKeesport, Allegheny County, Pa. Two other women were in the rear seat. An automobile owned and operated by Stanley McCallum, one of the defendants, came into contact with the rear of the automobile in which plaintiffs and their guests were riding. In the McCallum automobile the four other defendants were riding. This contact occurred while plaintiffs' automobile was stopped near the intersection of Third Avenue and Water Street, or at the end of the Third Avenue bridge, in the city of McKeesport.

Plaintiffs' position was that the wife plaintiff suffered permanent sterility following a miscarriage two weeks after the alleged accident, and that the miscarriage resulted when wife plaintiff was thrown forward from her seat as a result of the contact with the automobile owned and operated by the defendant McCallum.

Husband plaintiff testified that plaintiffs' automobile had just crossed the Third Avenue bridge in the city of McKeesport, and had proceeded down Third Avenue across Water Street, an intersecting street, and had been obliged to come to a stop on Third Avenue on the right-hand side of the avenue between Water Street and Mulberry Alley, due to vehicles stopped in front of them, which were then permitting other machines to travel out of Mulberry Alley into Third Avenue; that no left-hand turns were permitted off of Water Street onto Third Avenue, which resulted in machines going around and over Mulberry Alley and then onto Third Avenue; that he was stopped about a minute; that defendant's car hit him from the rear "a terrible crash"; that wife plaintiff got out and fainted.

The defendant McCallum testified that a sudden stop, without notice and without any visible reason, at the end of the Third Avenue bridge by husband plaintiff caused his car to slightly touch the rear of plaintiffs' car; that there was no damage done; that the contact was "just very slight"; and that it did not even move plaintiffs' car. He also testified that he had asked the other defendants to go for a ride that evening.

Another defendant, Stanley Marszalek, testified that they were out for a ride, and that he had no control over the operation of the automobile. He was sitting in the front seat with the defendant McCallum. The three other defendants were not present at the trial.

Wife plaintiff testified that there was a violent crash when the automobiles came into contact; that she was four and one-half months pregnant; and that she had a miscarriage two weeks thereafter. One of the other occupants of plaintiffs' car testified that when they were hit from the rear the crash was "pretty hard." The other testified that when they were hit from the rear there was "a terrible crash."

Dr. Seymor Iscovitz, a witness for plaintiffs, testified as to wife plaintiff's previous and subsequent condition.

Wife plaintiff was brought to Dr. Iscovitz on the evening of the accident. He said that wife plaintiff that evening when she left his office was obviously all right. He attributed the miscarriage to the injury received in the accident, and said: "From the history I was able to obtain, we can probably call it the sudden jar." However, he also testified, on cross-examination, that riding over rough streets could have caused it. Husband plaintiff, on cross-examination, had testified as to the roads and streets they had traversed that evening before coming in contact with defendant's car, and said that some were "very rough," and that they had crossed over railroad tracks at a bridge which made a very bad crossing.

Plaintiffs averred in their statement of claim that defendants "were jointly using, controlling, and occupying a certain motor vehicle or automobile involved in the accident hereinafter referred to," and that they were all "on a joint enterprise."

Plaintiffs' contentions on this appeal are that the trial judge, in certain material respects, erred in his charge to the jury, and that the verdict of the jury was clearly against the weight of the credible evidence, and hence a new trial should have been granted. It was not error for the trial judge to charge the jury that a verdict might be found against the defendant Stanley McCallum, the owner and driver of the automobile, or against him and any one or more of the other defendants depending upon their control of the automobile, and plaintiffs' contention to the contrary is without merit. In the absence of any control over the automobile or voice in its management, the other defendants were not affected by any negligence of the driver McCallum. "The negligence of the driver of a vehicle can be imputed to a passenger therein only when the evidence justifies a finding of the passenger's right to a share in the control of that vehicle at the time of the negligence. This is the test of such imputability whether

the driver and the passenger were engaged at the time in a 'joint enterprise' or not": *Rodgers et ux. v. Saxton,* 305 Pa. 479, at page 488, 158 A. 166, at page 169.

The statement in the charge of the court to the effect that as a matter of law the defendants were engaged in a joint enterprise was incorrect, but if there was any injury therefrom it was to the defendants. To establish a joint undertaking something more must be shown than that the parties were riding together; in itself the mere acceptance of an invitation to ride for pleasure does not ordinarily constitute a joint enterprise. *Alperdt et ux. v. Paige,* 292 Pa. 1, 6, 140 A. 555.

Section 13 of the Practice Act of May 14, 1915, P. L. 483, as amended by the Act of April 4, 1929, P. L. 140, section 1, 12 PS §412, mentions what averments, in a statement filed in an action of trespass, shall be taken to be admitted if not denied. "These are of (1) the person by whom the act was committed, (2) the agency or employment of such person, (3) the ownership or possession of the vehicle, machinery, property or instrumentality involved, and (4) all similar averments": *Fazio v. Pittsburgh Railways Co.,* 321 Pa. 7, at page 11, 182 A. 696, at page 697. The averment of joint enterprise is not mentioned in section 13, and proof of such averment was upon the plaintiffs, as it was not admitted by the failure of defendants to file an affidavit of defense containing a denial thereof. The testimony shows that defendant McCallum invited the other defendants into his automobile to take a pleasure ride for no particular purpose and with no definite objective, and there is nothing to establish that any one of them, other than McCallum, had any voice in the control, management, or direction of the automobile. Cf *Hilton et ux. v. Blose,* 297 Pa. 458, 147 A. 100. Under these circumstances the evidence did not prove a joint enterprise on the part of defendants at the time of the accident; and in a legal sense they were not on a joint enter-

prise. *Simrell et ux. v. Eschenbach,* 303 Pa. 156, 162, 154 A. 369.

Plaintiffs' next contention involving a portion of the charge of the trial judge is clearly without merit. Their complaint in substance is that the trial judge permitted the jury to consider all of the testimony of husband plaintiff and of Dr. Iscovitz. Husband plaintiff testified on cross-examination as follows: "Q. Do you know what kind of streets you drive on Northside in getting from California Avenue to the Point Bridge? A. I think the majority of streets are brick. Q. I mean with reference to the condition of the road, smooth or rough? A. Like an average brick street, some smooth and some rough. Q. Some very rough? A. Sure. ...... Q. And the railroad tracks at the bridge are very bad, aren't they? A. That is a bad crossing. Q. You went over that? A. Yes, sir."

Dr. Iscovitz, plaintiffs' witness, on cross-examination also testified: "Q. Is it possible that this [miscarriage] could be caused by a fall down steps? A. Yes, sir. Q. Is it possible it might be caused by stepping off a high curb? A. Yes, sir. Q. Is it possible it could be caused by ordinary riding in an automobile over rough streets? A. Ordinary riding we will allow up until seven months, because it usually doesn't harm a woman. Q. Is it possible it could be caused by that? A. Not by an ordinary ride. Q. I said by riding over rough streets? A. Oh, yes. Q. That could cause it? A. Yes, sir."

There was no objection to any of this cross-examination, and the information brought out thereby was for the jury's consideration. *Silberstein et al. v. Showell, Fryer & Co. (No. 1),* 267 Pa. 298, 304, 109 A. 701. The doctor testified that either one of two things to which wife plaintiff had been subjected the evening of April 26, 1937, could have caused the subsequent miscarriage. The trial judge properly submitted the matter to the jury. If the jury believed defendants' version of the accident and the extent of the contact of the automobiles

as described by the defendant McCallum, then the evidence was as consistent with the nonprobability that the accident caused wife plaintiff's miscarriage as it was with its probability. The evidence consequently warranted the jury's verdict.

Plaintiffs finally contend that the verdict was against the weight of the credible evidence. Plaintiffs' and defendants' versions of the accident differ, and there was conflicting testimony as to the seriousness of the contact of the respective automobiles. Taking Dr. Iscovitz's testimony together with that of defendants, it was within the province of the jury to conclude that the miscarriage was not to be attributed to the accident. The credibility of witnesses and the weight of the evidence are primarily for the jury. *Wilson v. Kallenbach*, 332 Pa. 253, 256, 2 A. 2d 727. The fact that more witnesses testified for plaintiffs than for defendants is not controlling. *O'Farrell v. Mawson et al.*, 320 Pa. 316, 320, 182 A. 538; *Lincoln v. Christian*, 94 Pa. Superior Ct. 145, 150.

The court below should have granted a new trial if it found that the verdict was against the weight of the evidence, but our appellate courts will not set aside a verdict which is supported by evidence, merely because, judged by the record, it is against the preponderance of the evidence. *Coyne v. John Gibbons Coal Co.*, 314 Pa. 502, 506, 172 A. 653.

Whether a verdict is contrary to the weight of the evidence rests within the discretion of the court below (*Wilson v. Kallenbach*, supra, p. 256), and the action of the court below in refusing to grant a new trial on such grounds will not be reviewed unless there is an abuse of discretion (*Coyne v. John Gibbons Coal Co.*, supra, p. 506). We find no such abuse in this case. The verdict is not plainly and manifestly against the weight of the evidence.

Assignments of error are overruled.

Judgment is affirmed.