## Beam *v.* Pittsburgh Railways Company, Appellant.

Argued October 6, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

reargument refused January 24, 1951.

*D. H. McConnell,* for appellants.

*Edward O. Spotts, Jr.,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, January 2, 1951:

In order to determine the issue here presented as to plaintiff's right of recovery it will be helpful to make an extended review of the authorities in regard to the question whether the owner of an automobile who is seated therein and who has intrusted the operation of his car to a companion may recover damages for injuries sustained by him by reason of the negligence of a third person if the driver of his own car has also by his negligence contributed to the happening of the accident,—in other words, whether the contributory negligence of the driver is imputable, under such circumstances, to the occupant-owner of the car.

One John F. Shook, aged 27, had known the decedent, Frank I. Beam, aged 42, for about six months, when on December 5, 1946, at about seven o'clock in the evening, he met him by chance in an inn. After staying there together for about a half hour they left in an automobile owned by Beam. When Shook was asked at the trial: "How did it happen that you left the Ro-Val Inn with Mr. Beam?" he replied: "Mr. Beam asked me to go with him." Beam drove the car to the Union Bar where they stayed for another half hour; then they walked from there, a distance of about a half block, to the Moose Club and remained there also for about a half hour. From there they went in Beam's car, Beam driving, about four blocks away, to Segreti's Bar, when they remained for about two or three hours. These places were all in Sharpsburg. From Segreti's Bar they started home in the car. Beam lived in the 5300 block of Keystone Street, Pittsburgh, and Shook in the 5200 block of Butler Street, a block away. It was then between eleven and twelve o'clock. They came up the main street in Sharpsburg, over the 62nd Street bridge, and turned off the bridge down Butler Street,

inbound toward 61st Street. They were following an inbound trolley car of the Pittsburgh Railways Company and were going at a rapid rate of speed; coming up toward the rear of that car they swerved to the left of it and on to the outbound track. An outbound trolley car, running at a speed of from 40 to 45 miles an hour, was then from 100 to 150 feet distant; both it and the automobile continued on toward one another; there was testimony to the effect that the motorman did not apply his brakes until within 30 to 35 feet of the automobile. The two vehicles met in a head-on collision with a terrific crash. Beam was killed and Shook was badly injured. Beam's widow, administratrix of his estate, brought suit to recover damages under the Survival and Wrongful Death Acts against Shook and Pittsburgh Railways Company on the theory that their concurrent negligence had caused the accident, and she obtained verdicts aggregating $25,000 against both of them. Pittsburgh Railways Company filed motions for a new trial and for judgment n.o.v., both of which were overruled and judgments were entered on the verdicts, from which judgments Pittsburgh Railways Company now appeals.

Who was driving Beam's automobile at the time of the accident? The plaintiff asserted that Shook was the driver. Shook denied this; he insisted that Beam was driving the car just as he had driven it from the Ro-Val Inn to the Union Bar and from the Moose Club to Segreti's Bar. Witnesses testified, however, that when they came to the automobile after the crash they found both Shook and Beam in the front seat, Shook unconscious, slumped over the steering wheel on the left, and Beam seated on the right with his head down on the dashboard. Beam died almost immediately thereafter.

The court submitted to the jury an interrogatory:

"Was John F. Shook the driver of the automobile which was involved in the accident?" The answer of the jury was "Yes". That being so, plaintiff's right of recovery against Shook cannot be questioned, because, whatever may have been their legal relation or status as between themselves, if Shook was negligent in the operation of the car plaintiff is entitled to recover from *him*: *Johnson v. Hetrick, Administratrix,* 300 Pa. 225, 232, 150 A. 477, 479; *Perry v. Hyback,* 302 Pa. 559, 564, 153 A. 770, 771; *Denton v. Michel's Bakery Co.,* 363 Pa. 502, 504, 70 A. 2d 284, 285; *Hopshire v. Yesenosky,* 157 Pa. Superior Ct. 545, 547, 43 A. 2d 351, 352. That Shook *was* negligent is obvious, turning as he did, at high speed, into the outbound track and into the path of a rapidly approaching car. That the motorman of the Pittsburgh Railways Company was also negligent would seem equally obvious if we are to accept, as we must, the testimony most favorable to the plaintiff that the motorman had the oncoming automobile in full sight at a distance of 100 to 150 feet, but nevertheless made no attempt to put on his brakes and stop his car until within 30 to 35 feet. Since, however, the plaintiff claims, and the verdict establishes, that Shook was concurrently negligent,—that is to say, by his contributory negligence helped to bring about the accident and thereby to cause Beam's death, the question arises whether that negligence on the part of Shook was legally imputable to Beam so as to bar the latter's recovery from the Pittsburgh Railways Company. Where the owner of a car is seated therein by the side of a friend, who, at the owner's invitation or by his permission, is driving the car, is the owner bound by the driver's negligence so as to become liable to any person injured thereby, or, by the same token, so as to prevent himself, if injured, from recovering against a third person whose negligence was concurrent with that of the driver?

Apparently the earliest authority on the subject in our Commonwealth is the case of *McMahen v. White,* 30 Pa. Superior Ct. 169. There the defendant, riding in his own carriage, permitted his guest to drive; there was a collision with another carriage the occupant of which, being injured, sued the defendant and obtained a verdict and judgment against him. The judgment was affirmed. It was admitted that the defendant personally was not guilty of any negligence; there was no evidence that he expressly directed, or tacitly assented to, the manner in which the carriage was driven. The court held, however, that the relation between defendant and his companion, who was driving, was that of master and servant as distinguished from that of bailor and bailee, because the test was whether he had the *right to control* the manner of driving, that there was nothing to show that he had parted with that right, and that he could have retaken possession of the reins at any moment and the driver was bound to obey his directions or surrender the reins to him.

In *Wollaston v. Park,* 47 Pa. Superior Ct. 90, a woman who had hired an automobile permitted her guest to take the wheel and the guest drove the machine negligently and injured a person on the road. It was held that she was liable in damages for the injuries sustained, because "She had absolute control of the person who was thus driving, for she clearly had the right at any moment to withdraw him from the management . . . . She was his superior in the management of the car, at that time, and he was her representative, servant or agent in that management."

In *Bell v. Jacobs,* 261 Pa. 204, 104 A. 587, the defendant, the owner of an automobile, had secured an expert workman to make some repairs to it, and, before leaving it at the repair shop, they were taking it for a drive to see what was needed. The workman was

driving and defendant sat beside him but made no request or suggestion as to the driving of the car. The car collided with a motorcycle and killed the person riding it. The defendant was held liable. The court said that it was defendant's car and he could not be excused because he was not personally at the wheel. "A man out riding in his car is not relieved from responsibility for its management because, with his permission, another is acting as driver; and this is especially so where the owner tacitly assents to the manner in which the car is driven. *There is a presumption, not here rebutted, that an owner present in his car has power to control it.*"

In *Schofield v. Director General of Railroads*, 276 Pa. 508, 120 A. 449, the plaintiff, who had the use of a truck, requested a friend, without compensation, to drive it for him. The plaintiff was in the truck. It was held that the relation between them was that of master and servant, and that the contributory negligence of the driver in negligently crossing a railroad track so that the truck was struck by a train would be imputed to the plaintiff who was injured in the accident and was suing the railroad company.

In *Lassock v. Bileski*, 94 Pa. Superior Ct. 299, the defendant, owner of an automobile, was seated next to his son who was driving. He was held liable for injury to a person caused by the negligent operation of the car. The Court said that "Where the owner of a vehicle is sitting by the side of his servant, the act of the servant in driving is the act of the master, and the trespass of the servant is the trespass of the master. The reason is that the master is in immediate control over the servant . . . . The defendant was riding in his automobile, which was driven by his servant. A presumption of law, therefore, arose, in the absence of evidence to rebut it, that the act of the servant was the

act of the defendant." Of course, the word "servant" is used here merely in its legal sense as defining the relation of the son, in driving the car, to his father, who was the owner of the automobile and an occupant thereof at the time of the accident.

In *Spegele v. Blumfield,* 120 Pa. Superior Ct. 231, 182 A. 149, it was held, as stated in the syllabus, that "Where an automobile is operated by a person other than its owner for the purpose, and with the permission, of the owner, who is present and who has, although he does not actually exercise, the unrestricted right of direction and control of the automobile, the owner is liable for its negligent operation; and this is so although the car is also being operated for the advantage of the driver or a guest." Plaintiff, the owner of the car, was riding in it with his son who was driving with his permission. Plaintiff was injured in a collision with defendant's automobile. It was held that if the son was negligent in the operation of plaintiff's car the latter could not recover from defendant. The court held that the mere relation of father and son did not of itself establish a legal status of master and servant or principal and agent, but that "Under the circumstances of this case where the plaintiff was the owner of the automobile which was being driven with his permission by his son, it must be presumed that the car and the driver were under the control of the owner as fully as if the driver were a paid servant. The car was being driven for the convenience and for the purposes of the owner and because it also served for the convenience of the son and the other passenger did not relieve the owner of his responsibility. . . . 'There is a *presumption* . . . that an owner present in his car has power to control it.' " The court further said that "if the owner is present, having, though not actually exercising, the unrestricted right of direction and control, he is liable for its negligent operation."

In *Reilly v. Philadelphia,* 328 Pa. 563, 195 A. 897, the plaintiffs were guests in an automobile driven by one Finnegan but owned by one Small, who was present in the car. Due to Finnegan's negligence there was a collision with a police car of the City of Philadelphia. Plaintiffs sued Small and the City and recovered verdicts against both. The Court, in an opinion by Mr. Justice, now Chief Justice, DREW, reversed the judgments against the City because of statutory provisions not here relevant, but affirmed the judgments against Small, saying "They [the plaintiffs] are entitled to their verdicts against Small who was present and in control of the operation of his car."

In *Von Cannon v. Philadelphia Transportation Co.,* 148 Pa. Superior Ct. 330, 25 A. 2d 584, we have a case that is especially interesting because it clearly points out the difference between a situation where a relation of bailor and bailee exists and one where the relation is determined by law to be that of master and servant or principal and agent. The plaintiff, a resident of North Carolina, owned an automobile; her husband and brother-in-law wanted to go from North Carolina to New York for a business purpose and plaintiff said that her husband could take the car. As they were about to leave they suggested to her that she take the trip with them and she consented. Her brother-in-law drove the car to a town in Virginia where the husband left the party to pursue his own journey in a bus. The brother-in-law continued to drive, with the plaintiff beside him on the front seat, and negligently collided with a bus of the defendant company. Plaintiff was injured and brought suit against the defendant, but a verdict obtained by her was reversed although the negligence of the driver of the bus was assumed. The court held that plaintiff originally had bailed the car to her husband, but that the bailment ceased when he left the car in Virginia, and from that point on the

situation was merely that of an owner of a car seated beside a person driving it with the owner's permission. The court stated that the plaintiff would then have been liable for any injuries sustained by a third person through the negligent operation of her car by her brother-in-law, and that this was the test upon the question whether her brother-in-law's negligence was imputable to her as plaintiff in her own action. The Court, reviewing the authorities, said: "Here, appellee [the plaintiff] had at all times the right to refuse her brother-in-law permission to continue driving her car and had the right to direct the manner in which he should drive and to so control his driving as to prevent injuries to herself or others . . . . 'There is a *presumption,* not here rebutted, that an owner present in his car has power to control it.' "

In *Atkinson v. Coskey,* 354 Pa. 297, 47 A. 2d 156, the defendant Lamon was the owner of an automobile driven by the defendant Coskey, who was driving it at Lamon's request; Lamon, with a guest, sat on the front seat with the driver while two other guests occupied the back seat. Through Coskey's negligence a pedestrian was struck by the car and killed. Mr. Justice JONES, speaking for this Court, said: "And, if Coskey was negligent, then also was Lamon under the principle of *respondeat superior.*"

The latest case in the reports is *Mazur v. Klewans,* 365 Pa. 76, 73 A. 2d 397, where Mr. Justice JONES reviewed many of the authorities. There the plaintiff, together with her husband and a friend, was riding in the friend's automobile. Plaintiff's husband was driving. The car skidded and plaintiff was injured. She recovered a verdict for damages against the friend who was the owner of the car. The judgment was affirmed. The Court once again cited with approval the principle that "There is a *presumption,* not here rebutted, that an owner present in his car has power to control it," to

which the Court added: *"In the instant case, there was nothing shown in derogation of Klewans' [the owner's] power to control the operation of his automobile."* It appeared that the plaintiff had requested her husband not to drive so fast but Klewans told her to "leave him alone, he is doing all right". By thus impliedly assenting to the manner in which the car was being driven he recognized his power of control in the very act of refusing to exercise it.

Analyzing, then, all these authorities, there are clearly deducible therefrom the following principles:— (1) The mere presence of the owner in an automobile while it is being driven in a negligent manner by another does not *necessarily* make him liable for an injury caused thereby, or impute to him the driver's negligence. It may be, for example, that the owner of the car is a woman whose husband is driving; in such case the husband is still regarded as the head of the family, and when he is at the wheel of the car, even with his wife present, the presumption is that *he* is in control: *Rodgers v. Saxton*, 305 Pa. 479, 158 A. 166; *Klein v. Klein*, 311 Pa. 217, 166 A. 790; *Watkins v. Overland Motor Freight Co., Inc.*, 325 Pa. 312, 188 A. 848. Again, the owner may have loaned or hired out his car to another person by what amounts to a bailment, in which case the owner, even if riding in the car, may have relinquished his rights as owner; cf. *Von Cannon v. Philadelphia Transportation Co.*, supra. Or, again, the owner may, by word or action, have expressly or impliedly transferred his right of control to the driver; where there is *evidence* of any such words, actions or conduct on the part of the owner, or any other circumstances bearing on the question as to whether he in fact surrendered his right of control, the question becomes, of course, a factual one for determination by the jury.

(2) There is a *presumption, in the absence of any evidence to the contrary,* that an owner present in his car has power to control it: *Bell v. Jacobs,* supra; *Mazur v. Klewans,* supra; *Spegele v. Blumfield,* supra; *Von Cannon v. Philadelphia Transportation Co.,* supra; see also 147 A.L.R. 961. Certainly, in the absence of any such contrary evidence, an owner allowing a friend to drive his automobile has the right to govern the manner of its operation, as well as, at any time, to terminate the permission given and to operate the car himself.

(3) The test of the owner's liability is the *right* of control, not whether he exercises it or not: *Matthews v. Derencin,* 360 Pa. 349, footnote p. 355 and cases there cited, 62 A. 2d 6, 9. Indeed, the owner's very failure to exercise his control would ordinarily amount to a tacit consent on his part to the manner in which the operation was being conducted and thereby establish his liability *a fortiori*; *Bell v. Jacobs,* supra; *Spegele v. Blumfield,* supra; *Von Cannon v. Philadelphia Transportation Co.,* supra.

(4) In the absence of evidence to the contrary, the legal relation between the owner seated in his car and the person whom he has permitted to drive it is that of principal and agent or master and servant and therefore he is not only liable for damages caused to a person by the driver's negligence but the driver's contributory negligence is imputable to him so as to bar his right of recovery, if he himself is injured, for damages caused by the negligence of a third person. In other words, if the negligence of the driver is imputable to him as a defendant it is also imputable to him as a plaintiff in the same situation: Rest. Torts, §§485, 486.

Applying these principles to the present case, it is obvious that, from whatever angle viewed, the present record makes recovery by plaintiff against the Pitts-

burgh Railways Company impossible. All that it discloses is that the automobile belonged to Beam, that when Beam and Shook left the first tavern which they visited Beam asked Shook "to go with him", and that, at the time of the accident, Shook, according to the finding of the jury, was driving. There is not a shred of evidence as to any conduct, words, actions, understandings or arrangements between the two of them to throw any light whatever on the circumstances under which Shook took the wheel. As already stated, Shook insists that Beam himself was driving the car when the accident occurred, but, accepting the jury's finding that it was Shook who was driving, all we know is that Beam, the owner was seated on the front seat beside him. To that situation, therefore, there is directly applicable the second rule stated above, namely, that "There is a *presumption, in the absence of any evidence to the contrary,* that an owner present in his car has power to control it." It would be flying in the face of all the authorities to hold that merely by allowing Shook to drive the car Beam made him a bailee of the automobile and completely abnegated his right of control over the operation of his own car. Plaintiff's statement of claim alleged that Beam was a "guest passenger," but there is not a word of testimony to indicate that Beam had relegated himself to the status of a "guest" in his own automobile and had actually bailed or turned over to Shook the car and the exclusive charge and control thereof. Nor was their trip homeward a "joint enterprise" merely because they had practically the same destination;* even, however, if it could be so regarded,

---

*Alperdt v. Paige,* 292 Pa. 1, 6, 140 A. 555, 557; *Johnson v. Hetrick, Administratrix,* 300 Pa. 225, 231, 150 A. 477, 479; *Carlson v. Erie R.R. Co.,* 305 Pa. 431, 436, 437, 158 A. 163, 165; *Marmar v. Farrell,* 116 Pa. Superior Ct. 586, 177 A. 224; *Baugh v. McCallum,* 140 Pa. Superior Ct. 276, 280, 14 A. 2d 364, 367.

the negligence of Shook would still be imputable to Beam, because, where an occupant of a conveyance is engaged in what the law characterizes as a common or joint enterprise with the operator, the contributory negligence of the driver is imputable to the occupant: *Alperdt v. Paige*, 292 Pa. 1, 6, 140 A. 555, 557; *Griffiths v. Lehigh Valley Transit Co.*, 292 Pa. 489, 494, 141 A. 300, 301; *Campagna v. Lyles*, 298 Pa. 352, 356, 148 A. 527, 528; *Curry v. Riggles*, 302 Pa. 156, 160, 153 A. 325, 326; *Carlson v. Erie R.R. Co.*, 305 Pa. 431, 437, 158 A. 163, 165; *Roschmann v. Sanborn, Trustees*, 315 Pa. 188, 192, 172 A. 657, 658; *Denton v. Michel's Bakery Co.*, 363 Pa. 502, 505, 70 A. 2d 284, 285. Only if Beam had entirely relinquished his right of control as owner and deliberately made himself a "guest" in his own car would the principle of imputability of the driver's negligence have become inapplicable. But, as previously stated and reiterated, there is no evidence whatever to permit of such a finding.

It need hardly be added that the fact that the turn of Shook into the outbound track happened so quickly that Beam would scarcely have been able to prevent it has nothing whatever to do with the question of the right of recovery in this action. If, in the view of the law, his relation to Shook was that of master to servant or principal to agent, the doctrine of *respondeat superior* would impose liability upon him for damages caused by Shook's negligent act, even if that act had been in disregard of his directions, and, by the same token, would be imputable to him in his own action as plaintiff.

We would ordinarily be disposed to grant a new trial in this case in order to develop, if possible, the facts as to how Shook came to drive Beam's car and as to what transpired between them on their homeward journey, but, since the only possible witness who could

throw light on the subject is Shook, and since Shook insists that Beam himself was driving the car and therefore negates plaintiff's claim that the right of control had been passed over to him, it is obvious that no such additional evidence can be obtained to submit to a jury or any factual issue be created for their consideration. There would still remain, therefore, the presumption of the occupant-owner's right of control barring plaintiff's right of recovery in this action.

The judgment against the defendant John F. Shook is affirmed; the judgment against Pittsburgh Railways Company is reversed and judgment is here entered in favor of that defendant.