**MYLES et al. v. PHILADELPHIA TRANSP. CO. (two cases).**

**Nos. 10324, 10325.**

United States Court of Appeals Third Circuit.

Argued Feb. 6, 1951.

Decided June 22, 1951.

Harold Scott Baile, Philadelphia, Pa. (Jay B. Leopold, Philadelphia, Pa., on the brief), for appellant.

Joseph A. Hagerty, Philadelphia, Pa. (Michael J. O'Donnell, Philadelphia, Pa., on the brief), for appellees.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

These appeals are from judgments entered on jury verdicts in favor of Alfred Myles and his cousin Clyde W. Myles, in the amounts of $1500 and $6500, respectively. They were occupants of an automobile owned by Alfred Myles and driven by his wife, Constance, when it collided in Philadelphia, Pennsylvania, with a street car owned and operated by the defendant. We are not now concerned with how the accident happened, for the jury determined, and its verdict in this respect is unquestioned, that the defendant was negligent and Constance Myles was contributorily negligent; she was accordingly denied any recovery. The defendant took the position in the District Court that as a matter of law Alfred Myles was barred by the contributory negligence of his wife. The learned District Judge ruled otherwise, instructing the jury that Mrs. Myles' conduct was not imputable to her husband, and subsequently denied the defendant's motion for judgment notwithstanding the verdict in favor of Alfred Myles. Whether in the circumstances of the case, Alfred Myles can not recover because of his wife's conduct is the sole question on the appeal from Alfred Myles' judgment. The defendant does not dispute Clyde Myles' right to recover as a guest-passenger for his personal injuries, but seeks to have his judgment set aside and a new trial granted because of the alleged error of the District Judge in refusing to strike the testimony of one of Clyde Myles' medical experts, and in submitting to the jury the issue of injury to Clyde Myles' ears.

The only other significant facts surrounding the accident which should be noted are that the plaintiffs were returning to Philadelphia frome Cape May, New Jersey. Alfred Myles had driven for about two and one-half hours, that is, until they were approximately a half hour from Philadelphia and the accident. Constance Myles then drove, and both Alfred and Clyde Myles were "dozing".

■ In disposing of the issue presented on the appeal concerning Alfred Myles, it should be stated at the outset that since the collision occurred in Pennsylvania, the law of that state is decisive. Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

It is clear that a mere guest passenger is not chargeable with the negligence of the driver of the vehicle in which he is riding, for to fix responsibility upon him the evidence must justify the finding of a right to a voice in the control of the vehicle: Matthews v. Derencin, 1948, 360 Pa. 349, 355, 62 A.2d 6; Johnson v. Hetrick, 1931, 300 Pa. 225, 231, 150 A. 477. But the facts which make the instant case different with respect to Alfred Myles are that he was the owner present in the automobile at the time of the accident, and the driver was his wife. On this score, we are fortunate to have the guidance of two decisions of the Pennsylvania Supreme Court, promulgated within recent months, which were not available to the learned District Judge. These cases are Mazur v. Klewans, 1950, 365 Pa. 76, 73 A.2d 397, and Beam v. Pittsburgh Railways Co., 1951, 366 Pa. 360, 77 A.2d 634. The decision in Mazur v. Klewans holds the law of Pennsylvania to be that there is a presumption that an owner present in his car has the power to control it. In Beam v. Pittsburgh Railways Co., supra, the Pennsylvania Supreme Court reviews the cases in detail and 366 Pa. at pages 370–371, 77 A.2d at page 639, deduces these principles: First, the mere presence of an owner in an automobile when it is driven by another in a negligent manner does not necessarily make him liable for an injury caused thereby or impute to him the driver's negligence. Second, there is a presumption, in the absence of any evidence to the contrary, that an owner present in his car has power to control it. Third, the test of the owner's liability is the right of control, not merely whether he exercises it, and the owner's failure to exercise his right ordinarily amounts to tacit consent on his part to the manner in which the operation is conducted, thereby establishing his liability *a fortiori.*

Fourth, in the absence of evidence to the contrary, the legal relation between the owner seated in his car and the permissive driver is that of principal and agent or master and servant, consequently the negligence of the driver is imputed to such owner whether the owner is plaintiff or defendant.[1]

The plaintiff urges that the general principles above stated should not be applied here because of the marital relationship between the owner and driver in this case. Reliance is placed upon the Pennsylvania cases holding that the relationship of husband and wife does not give rise to a master-servant or principal-agent relationship.[2] Watkins v. Overland M. F. Co., Inc., 1937, 325 Pa. 312, 317, 188 A. 848; Klein v. Klein, 1933, 311 Pa. 217, 166 A. 790; Rodgers v. Saxton, 1931, 305 Pa. 479, 484, 158 A. 166, 80 A.L.R. 280. In each of these cases, it was the husband who was driving, and the wife who was the owner-passenger, and in each the Court concluded that the negligence of the husband was not imputed to his wife. But it is clear that the defendant is not, indeed it could not be, depending upon the husband-wife relationship *per se* to establish the liability of the husband in the instant case; it is depending upon the owner-driver relationship as stated in the Mazur and Beam cases. The Rodgers case, the leading case in Pennsylvania on the husband-wife situation, did not hold that the marital relationship alone destroyed the applicability of the general rule. Rather, it proceeded upon the further policy holding that "The husband is still the head of the family, and when he is at the wheel of that car, even with his wife present, the presumption is that he is in control of the car, and, in the absence of evidence to the contrary, he is solely responsible for its operation." 305 Pa. at page 485, 158 A. at page 168. The express holding was followed in

---

1. It is this particular use of the master-servant terminology which makes the language of our decision in Stafford v. Roadway Transit Co., 1948, 165 F.2d 920, 922, consistent with the principles announced in the decisions referred to in the text.

2. This principle, like that in Restatement, Torts, Section 487 (comment a), deals with the effect of the marital relationship itself and does not prevent a master-servant or principal-agent relationship from arising. See Cox v. Roehler, 1934, 316 Pa. 417, 419, 175 A. 417. The same is true of the father-son relationship: Spegele v. Blumfield, 1935, 120 Pa.Super. 231, 182 A. 149.

the Watkins case, and the Mazur case specifica'ly distinguishes the Rodgers, Klein and Watkins decisions on that ground. And in stating that the mere presence of the non-driving owner in his automobile did not necessarily impute to him the negligence of the driver, the Court in the Beam case, supra, 366 Pa. at page 370, 77 A.2d at page 639, cited as an example of exception not the fact of marital relationship, but the case where "the owner of the car is a woman whose husband is driving; in such case the husband is still regarded as the head of the family, and when he is at the wheel of the car, even with his wife present, the presumption is that *he* is in control (citing cases)."

We think it apparent from the foregoing that if the existence of the marital relationship between the owner who is present and the operator of the vehicle furnishes an exception to the general rule, it does so only because in Pennsylvania the husband, at least for this purpose, is the head of the family and presumptively in control of his wife's automobile when he is driving. Otherwise, we can find no justification for the repeated emphasis by the Pennsylvania courts upon the holding that the husband is still the head of the family, which alone is said to give rise to the presumption of control in him. What effect that policy has upon the responsibilty of the husband present when his wife is driving her own car, we need not determine. In this case, the wife was driving the husband's automobile. We think the general rule applies, and that Alfred Myles, as owner, was presumptively in control. That he is also head of the family, if significant in the context of this case, can only serve to assure the correctness of our conclusion.

From all of this, we conclude that the District Court erred in instructing the jury that, as a matter of law, the contributory negligence of Mrs. Myles could not prevent her husband from recovering damages from the defendant. But we do not agree with the defendant that the Pennsylvania law as now authoritatively declared goes to the opposite extreme and requires an instruction that in the circumstances of this case Mrs. Myles' negligence is imputable to her husband as a matter of law. In brief, we believe there was a jury question which was not adequately presented to the jury.

In reaching this result, we attach importance for present purposes to the following statement of doctrine in the Beam case: "Or, again, the owner may, by word or action, have expressly or impliedly transferred his right of control to the driver; where there is *evidence* of any such words, actions or conduct on the part of the owner, or any other circumstances bearing on the question as to whether he in fact surrendered his right of control, the question becomes, of course, a factual one for determination by the jury." 366 Pa. at page 370, 77 A.2d at page 639. To us, this means that words or actions of the owner-passenger indicating that the driver is, to act entirely on his own responsibility and as free of supervision as if the owner were absent can relieve the owner-passenger of responsibility beyond normal agency limitations, which might otherwise result from his mere presence in the vehicle. The owner's behavior may tell the story effectively without explicit accompanying narrative: his dozing more clearly than articulated phrases may convey to the driver the message, "You are entirely on your own responsibility just as if I were absent." It seems logical to permit the trier of fact to draw the inference it considers reasonable in the circumstances. Cf. Stafford v. Roadway Transit Co., 3 Cir., 1948, 165 F.2d 920, 922.

In the instant case, at 9:30 P.M., or later, after "swimming and playing on the beach all day in the sun", Alfred Myles and the others left Cape May, New Jersey, to drive home to Philadelphia. He drove two and one-half hours, then surrendered the wheel to his wife and for half an hour until just before the accident, he proceeded to "doze". His testimony gives rather a clear picture of his relation to the operation of the automobile.[3] It is true, these attending circum-

3. He testified:
"I was dozing as we came to the intersection. The car stopped, and I

looked around, raised up, and noticed a streetcar approximately a block or a block and a half proceeding south on

stances might fail to impress or persuade the jury. But we believe it within the area of reasonableness for the jury to conclude that there had been an exculpatory surrender of the right of control. The totality of circumstances was such as to call for submission of this entire question of the relationship of Alfred Myles to the operation of his car at the time of the accident to the jury under an instruction indicating both an owner's normal responsibility and the possibility of effective relinquishment of that responsibility. To make this possible, there should be a new trial of the claim of the owner, Alfred Myles.

There remain to be disposed of the issues affecting the judgment obtained by Clyde W. Myles. He sustained substantial injuries to his hip in the accident, and on that account was hospitalized for sixty-five days. In addition, he had received a blow on his head which, he claims, caused a ringing in his ears never since relieved. His medical expert, who examined him just prior to the trial, found that although his conversational hearing was satisfactory, there was a deficiency at high ranges and that the prognosis was not good.

We do not doubt that the injuries Clyde Myles suffered (other than to his ears) as to which defendant raises no question, clearly support the verdict of the jury. Nevertheless, the defendant takes the position that the verdict would not have been so large if the issue of injury to the ears had not been submitted to the jury.

■ We do not agree that the plaintiff's medical expert's testimony should have been stricken from the record merely because he conceded that if Clyde Myles' hearing was normal in March, 1949, then the accident, which occurred on September 6, 1948, could not have been the cause of the particular aural deficiencies he found. That admission, if anything, was helpful to defendant. The date of March, 1949, was important because the plaintiff, who was already an officer in the United States Navy, took a medical examination for a permanent commission as a limited duty officer, which status was subsequently granted to him. But the actual findings of the Navy examination were not known, and Clyde Myles testified that he had the ringing in his ears at the very time he took it. Moreover, Clyde Myles testified that he first noticed the ringing in his ears within a few days after the accident while he was in the hospital, and that he received medication for the condition until March, 1949. Accordingly, his expert's testimony that the ear injury could be caused by concussion and that it would manifest itself soon after the causative force was applied, rather than much later, was admissible evidence, and highly relevant.

Similarly, we do not agree that the plaintiff failed to carry his burden of connecting

---

Torresdale Avenue. I laid my head back, closed my eyes, and then we started up, I noticed the light green, and proceeded on west on Levick. And as we was crossing the street, I remember seeing the street car just at the instant of the impact, and noise, and that is all I remember until I was being helped aboard a truck on the way taking to the hospital." (Defendant's appendix, page 15a).

Questions and answers on cross-examination of the same witness are also illuminating:

"Q. Now, as I understand it. Lieutenant Myles, you were asleep or dozing on this part of the trip, weren't you? A. That's right.

"Q. You had been swimming and playing on the beach all day in the sun? A. That's right.

"Q. That is, you and your wife and your cousin? A. Yes, and relatives that we were visiting.

"Q. And your relatives, yes. So that coming home you were tired? A. That's right.

"Q. And having driven for two and a half hours yourself, in order that you could rest, your wife started to drive? A. That's right.

"Q. Now, after the time that you say you felt the automobile stop at Torresdale Avenue, you looked some place, you said, and then you put your head back to doze off again? A. That's right.

"Q. So that when the automobile started to move again, having stopped at Torresdale Avenue, and up until the time that there was a collision, you did not see the trolley car? A. Not after we started, no." (Defendant's appendix, pages 17a–18a).

the injury with the accident, nor was the jury forced to choose between any conflicts in plaintiff's own medical evidence on the issue of causation. We conclude that the grounds asserted by the defendant for a new trial as to Clyde W. Myles are insufficient.

For the reasons stated, the judgment in favor of Alfred L. Myles will be vacated, and the cause remanded for further proceedings not inconsistent with this opinion; and the judgment in favor of Clyde W. Myles will be affirmed.