E. W. MILLER, Appellant,

v.

Emma ENDER et al., Appellees.

No. 3273.

Court of Civil Appeals of Texas.

Eastland.

Oct. 19, 1956.

Rehearing Denied Nov. 16, 1956.

Scarborough, Yates, Scarborough & Black, Abilene, for appellant.

Bradbury, Tippen & Brown, Abilene, for appellees.

GRISSOM, Chief Justice.

Emma, Christine and Fred W. Ender sued E. W. Miller for damages caused by a collision between automobiles driven by Fred Ender and Miller. A jury found that the drivers of both automobiles were guilty of negligence which was the proximate cause of the collision. Judgment was rendered for Emma and Christine Ender and Miller has appealed.

The jury found that the Enders were not on a joint mission at the time of the collision. Appellant contends the court erred in submitting the issue and in overruling his motion for judgment notwithstanding the verdict because the evidence showed as a matter of law that the Enders were on a joint mission. The evidence relative to this question comes only from Miss Christine Ender and Mr. Fred Ender. Mrs. Emma Ender was 78 years of age and confined to her bed as a result of the accident and, therefore, did not testify. Christine Ender was 51 and Fred Ender was 53 at the time of the collision. Fred and Christine Ender were single and lived in the same house with their widowed mother, Mrs. Emma Ender, on a farm owned by either Mrs. Emma Ender or by the three of them. Fred Ender farms the land with equipment owned and maintained by him. He owned and maintained the automobile in which the Enders were riding. The record does not conclusively show either who owns the farm or the contractual or business relationship between the Enders. It might be reasonably concluded from the record that Mrs. Emma Ender owned the farm; that it was rented to and cultivated by Fred Ender and that Miss Christine Ender, who, with the assistance of her mother, did the cooking and general housework, was supported by her mother or brother, or both.

The following is the substance of all the testimony, viewed in the light most favorable to the challenged jury finding, pertinent to the questions raised by appellant. The Enders were going from their home to Abilene. Fred Ender owned the automobile. Fred Ender was driving. Fred Ender was going to Abilene to buy parts for his tractor. He owned and maintained the tractor and used it in making crops on said farm. Christine Ender and her mother were going to Abilene to do some personal shopping. Christine Ender did not know how to drive an automobile. The record does not show whether the mother knew how to drive, but she was more than seventy years old. There is no evidence that the mother or sister of Fred Ender attempted to direct the manner in which he

drove his automobile. Miss Christine Ender testified that at the time of the collision she was sitting in the rear of the car and paid no attention to what was going on. She testified with reference to her brother's driving:

"Q. And however he did it that was all right with you? A. Yes, sir."

She further testified:

"Q. Now, the car was in your brother's name, had you contributed to the purchase of that automobile? A. No. I got nothing to do with it. I told you once before.

"Q. And when you all go on a trip like this did you chip in on the gas and oil? A. No. I don't chip in, because I don't do that. I just—

"Q. Who pays for that? A. My brother pays for that.

"Q. He doesn't pay you anything for doing the cooking and the house cleaning and things of that kind? A. Well, I get some off, when I farm.

"Q. Off of the farm? A. Yeah.

"Q. And the money that was made off the farm is what was used to buy this car, wasn't it? A. Well, he did that, I didn't.

"Q. I know, but the money; what I am getting at, that was used to buy the car, was money that had been earned by the farm? A. Yeah, I guess, that's right.

"Q. And you and your mother and your brother own that farm? A. Yeah, we own that."

Fred Ender testified:

"A. Well, as much as I know, I think I had tractor trouble. I think I was coming down after parts.

"Q. Well, do you know why your sister and your mother were with you?

A. They always go with me if I go anywhere.

"Q. Was the business in part of their business or were they just coming on your business? A. Well, in a way I guess they were just to buy some shopping; to buy some stuff here.

\*   \*   \*   \*   \*   \*

"Q. Now, that farm on which you live is one that is owned by you and your mother and sister, is it not? A. Mother owns it.

"Q. Your mother owns it? A. Yes, sir.

"Q. And the income from that farm is the money that the three of you live on, is it not? A. That's right.

"Q. The money that was used to purchase this automobile that you were riding in at the time, the day of the wreck, was money that the farm had earned, is that not true? A. Out of my part.

"Q. Now, the money for the gasolene and oil and the operating expenses of the automobile and of the farm, were taken out of the pot, or out of the earnings of the farm, were they not? A. Just out of my part.

"Q. Out of your part only? Is that right? A. Yes, sir.

"Q. Sir? A. That's right. Out of my part.

"Q. Now, on this particular day, when you came to Abilene or were on your way to Abilene, I believe you testified that your mother and your sister went everywhere with you? A. That's right.

"Q. So on all of your trips that you made in that automobile your wife— and your sister and your mother went along, is that true? A. That's right.

\*   \*   \*   \*   \*   \*

"Q. Now Mr. Ender, it was for their convenience also, partly that the trip was made to Abilene, was it not? A. That's where we started.

"Q. Now, in addition to the parts that you were going to get for your tractor, that tractor was one that was used in the operation of the farm, owned by your mother, was it not? A. That was my part; tractor I owned.

"Q. I know, but the tractor was used on the farm that your mother owned, isn't that true? A. Yes, sir.

"Q. Sir? A. That's right, I guess, in a way.

"Q. And the money that was earned there on the farm was used for buying groceries and other necessities in maintaining that house, is that not true? A. How was that?

"Q. The money that you made there on the farm, on your mother's farm was money that you—you used that money; the earnings from the farm to buy the groceries and other things that were bought for that farm, didn't you? A. Sure. You got to eat.

"Q. And the things that your mother and your sister would have bought when they came to Abilene, would have been taken out of the pot, would it not? A. Out of their part and my part."

In support of his contention that the evidence showed conclusively the Enders were on a joint mission appellant cites, among other authorities, Nelson v. Fulkerson, Tex.Sup., 286 S.W.2d 129; Straffus v. Barclay, 147 Tex. 600, 219 S.W. 2d 65 and El Paso Electric Company v. Leeper, Tex.Com.App., 60 S.W.2d 187. We recognize the correctness of said decisions but think they are not controlling here.

The record does not conclusively show the Enders were on a joint mission. The jury could have reasonably concluded that Fred Ender was driving the automobile, owned, maintained and operated solely by him, to Abilene for the purpose of obtaining parts for his tractor which was used by him in cultivating a farm which he rented from his mother. It may have also believed that his sister and mother were merely passengers or guests in his automobile and that their purpose in going to Abilene was to do their personal shopping. The evidence does not compel the conclusion that the mother and sister had the same purpose as Fred Ender in making the trip, nor does it require the conclusion that either the mother or sister had the right to control the manner in which he drove his automobile. The finding that the Enders were not on a joint mission is supported by the evidence. The negligence of Fred Ender can not, therefore, be imputed to either his mother or sister. The question in dispute was, at most, one for the jury. " * * * on the issue of imputable negligence, under contradictory or inconclusive evidence, it is for the jury to determine whether the passenger controlled or had the right to control the driver at the time of the accident, [and] whether the driver and the passenger were engaged in a joint or common enterprise * * *." 65 C.J.S., Negligence, § 261, pp. 1176, 1177. See also Collier v. Rives, Tex.Civ.App., 103 S.W.2d 830, 832; Douty v. Delta Drilling Company, Tex.Civ.App., 264 S.W.2d 164, 167, RNRE; O'Brien v. Woldson, 149 Wash. 192, 270 P. 304, 62 A.L.R. 440; Carlson v. Erie R. Co., 305 Pa. 431, 158 A. 163, 80 A.L.R. 312; Archer v. Chicago, M., St. P. & P. R. Co., 215 Wis. 509, 255 N.W. 67, 95 A.L.R. 857; Garcia v. Moncada, Tex.Com.App., 127 Tex. 453, 94 S.W.2d 123, 124 and Ford Motor Company v. Maddin, Tex.Com.App., 124 Tex. 131, 76 S.W.2d 474, 477.

The judgment is affirmed.