**BILL BELL, Inc., Appellant,**

v.

**D. C. RAMSEY, Appellee.**

No. 3305.

Court of Civil Appeals of Texas.

Waco.

Nov. 17, 1955.

Rehearing Denied Dec. 8, 1955.

Hassell & Hassell, W. D. Riley, Jr., Dallas, for appellant.

Lyne, Blanchette & Smith, Dallas, for appellee.

McDONALD, Chief Justice.

Plaintiff Ramsey sued defendant Bill Bell, Inc. for the value of a motor, boat, and trailer, alleging that he left such property with defendant to have same repaired, and that while in defendant's keeping it was stolen. Plaintiff further alleged that defendant became a bailee of the property, charged with the duty to return it, and that when defendant failed to return it, defendant became liable for its value. Trial was to the court without a jury, which held that the defendant was bailee of the property for the mutual benefit of the parties; that defendant was negligent in the safekeeping of the property; that the property was of a value of $575; and the court rendered judgment for plaintiff for $575.

The defendant appeals, contending: 1) The Trial Court erred in its conclusion that defendant was a bailee of the property for the mutual benefit of the parties. 2) That if a bailment did arise, it was not a bailment for the mutual benefit of the parties, but a gratuitous bailment only, and defendant is liable only for gross negligence, which was neither plead nor proved. 3) The Trial Court erred in finding that defendant was guilty of negligence; and that plaintiff was guilty of no act of contributory negligence that brought about the loss of the property.

The record reflects that defendant is engaged in the business of selling and repairing boat motors and engines; that plaintiff contacted defendant's manager and told him that his motor was not giving maximum efficiency, and asked if it could be repaired. Defendant's manager answered that it could be repaired and told plaintiff to bring the motor out on the boat on the trailer and he would check it. (On previous occasions, during a 3 or 4 year period, plaintiff had left the boat, motor, and trailer at defendant's place of business for checkup and repair. Defendant would sometimes tell plaintiff what it would cost; at other times he would go ahead and repair the motor and bill plaintiff). Plaintiff delivered the motor, boat, and trailer and left it on defendant's lot behind defendant's

place of business, as he had done in the past. The next morning plaintiff talked with defendant's manager, who told plaintiff that he had checked and inspected the motor and that it would cost about $100 to fix it. Plaintiff said that this was too much money, whereupon defendant's manager suggested that the manufacturer might fix the motor on its manufacturer's warranty, and said he would write to the manufacturer and see if they would fix it. Plaintiff called defendant a time or two to check on whether defendant had heard anything from the manufacturer, and on the last such call learned that the property had been stolen.

Plaintiff testified that he took the rig to defendant to get it fixed, and fixed regardless of who fixed it. Defendant's manager testified that he told plaintiff it would cost about $100, and that he was "vague" as to what plaintiff told him to do; that he didn't remember word for word what plaintiff said or just exactly what happened. It was then that defendant's manager said that he would write to the manufacturer and see if their warranty would cover the repair of the motor. Such was the state of affairs when plaintiff called defendant to find out if the manufacturer had been heard from, and learned that the property had been stolen.

The Trial Court filed findings of fact substantially in keeping with the foregoing recitation, and further found that: 1) the defendant was negligent in several respects in the protection of the motor, boat, and trailer while in its possession, which acts of negligence proximately caused the loss of the property; and 2) that plaintiff was guilty of no act of contributory negligence that brought about the loss of the property; 3) that the reasonable market value of the property at the time it was stolen was $575.

The Trial Court concluded as a matter of law that the conditions under which the property was left with defendant constituted defendant a bailee of the property, for the mutual benefit of both the plaintiff and defendant.

The controlling question involved here is whether or not the evidence sustains the Trial Court's conclusion that the defendant was the *bailee of the property for the mutual benefit of the parties.* Defendant's first contention is that it does not sustain such conclusion, and its second contention is that if a bailment of any character is sustained, it is a gratuitous bailment.

The defendant contends and the foregoing record reflects that at no time did the plaintiff actually tell defendant's manager that he would pay $100 or any sum of money to have the motor fixed; that therefore there was no contract for defendant to fix the motor; and for such reason there was no bailment for mutual benefit; —and that in any event, if a bailment be construed from the facts, it was a gratuitous bailment under which defendant was liable only for gross negligence, which was neither alleged nor proved.

Adair v. Roberts, Tex.Civ.App., 276 S.W. 2d 565, defines bailment as a delivery of personal property to another for some specific purpose, upon a contract, express or implied, that such purpose will be carried out.

In City National Bank v. Conley, Tex. Civ.App., 228 S.W. 972, a bailment was defined as a delivery of personal property by one person to another in trust for a specific purpose, with a contract express or implied, that the trust should be faithfully executed and the property returned when the special purpose is accomplished or kept until the bailor has reclaimed it.

Rust v. Shamrock Oil & Gas Corp., Tex. Civ.App., 228 S.W.2d 934, 935, says: "It is universally recognized that, to constitute the relationship of bailor and bailee, there must be a contract expressly entered into or one arising by implication, growing out of the delivery of property to the party entrusted with its care. There must be a delivery of the property to the bailee and an actual acceptance of it by him. * * * His acceptance of the property and of the responsibilities accompanying the relationship may be proved directly or by circumstances * * *."

■ From the foregoing authorities we see that the elements of a bailment are 1) delivery of personal property from one person to another in trust for a specific purpose and acceptance of delivery; 2) an express or implied contract that the trust will be carried out and the property returned to the bailor.

■ Plaintiff delivered the motor, boat, and trailer to defendant at defendant's invitation, for the purpose of checking and repair. Defendant accepted the property, held possession of same, and proceeded to check it, and was in process of finding out if the manufacturer would perform the necessary repairs on its warranty, pursuant to its own suggestion. Even adopting the view of defendant that no definite agreement had been reached that defendant was to perform the repairs, it is still obvious that the elements of a bailment were met, and that defendant became the bailee of the property when its manager accepted it and proceeded to check it. A bailment having been thus created, continued and could not terminate until the property be re-delivered to plaintiff or plaintiff be notified that negotiations were terminated and to pick up his property.

We now come to consider whether the bailment created was one for the mutual benefit of the parties, or merely a gratuitous bailment. Defendant contends that it is a gratuitous bailment, and that it could not be a bailment for mutual benefit unless plaintiff definitely agreed to pay defendant a sum certain for fixing the motor. With the foregoing we cannot agree.

■ In determining whether a bailment is gratuitous or for mutual benefit, inquiry is not directed to the character or certainty of the benefit or profit, but to whether the bailment was accepted for the purpose of deriving the one or the other. Generally, if the bailment was made at the instance, or on the invitation of the bailee —as was the situation in this case—because of benefits, *direct or contingent, expected to accrue, or* on a contract express or im-

plied, having a legal consideration, it is not gratuitous. 5 Tex.Jur. 1015.

■ Citizens National Bank v. Ratcliff & Lanier, Tex.Com.App., 253 S.W. 253, was a case in which the bank received Liberty Bonds from a customer with instructions to sell and place the proceeds to the customer's account. The bonds were lost. The court held that although the bank was doing the service without charge, the *prospect* of the bank getting the proceeds of the sale left on deposit was sufficient consideration. *It was further held that a direct charge for services is not necessary to constitute a bailment for hire, or for mutual benefit, if the bailment is incidental and beneficial to the bailee's business.* The foregoing opinion was adopted by the Supreme Court.

In Clark v. Tabers, Tex.Civ.App., 54 S. W.2d 262, a jewelry store delivered a brooch to a young lady so that she might show it to her father to obtain consent for purchase. The brooch was lost without gross negligence on the bailee's part. The bailee, when sued by the bailor, contended she was only a gratuitous bailee of the brooch and liable only for gross negligence. The court held that the bailment had its origin in the combined efforts of two parties to consummate the sale of the brooch to one of them for the benefit of both—and was a bailment for the mutual benefit of both the bailor and the bailee.

In McDonald v. Leonard Bros., Tex.Civ. App., 134 S.W.2d 460, 462, Error Dis., Leonard Brothers maintained a free parking lot for the public, both customers and non-customers. McDonald parked her car in the lot. The car disappeared under circumstances of ordinary negligence on the part of Leonard Brothers. McDonald sued Leonard Brothers for the value of the car. Leonard Brothers defended, contending that since no charge was made, that it was only a gratuitous bailee and liable only for gross negligence. The court, citing numerous authorities, held the existence of a bailment for mutual benefit, and said: "We do not think that the record will support a legal conclusion that the bailment was a gratuitous one. True * * * appellant's daughter paid nothing for the service and no compensation was demanded of her. Yet it is equally clear that the reason appellee maintain this 'free' parking lot was because it believed business to its store would be enhanced, and further that if it had not so believed the 'free' parking lot would not have so been kept by it. We think that such a purpose by appellee, whether profitable or not, would be a sufficient consideration for the parking to take the case out of one of a pure gratuity."

■ From the foregoing authorities the rule is *that a bailment is for the mutual benefit of the bailor and the bailee, although nothing is paid directly by the bailor, where the property of the bailor is delivered by the bailor, and accepted by the bailee, as an incident of a business in which the bailee makes a profit.* In such situation the bailee receives his compensation in the profits of the business in which the bailment is an incident. Therefore a business institution, which, within the scope of its business accepts and receives a bailor's property, even though no charge is made, is with respect to such property more than a mere gratuitous bailee, and should be held to the responsibilities of a bailee for mutual benefit, inasmuch as such services attract patronage.

It follows that since the plaintiff delivered the motor to defendant incident to defendant's business of selling and repairing motors, that such bailment was a bailment for the mutual benefit of the parties. The defendant was to benefit by either getting to repair the motor on this occasion, and/or to receive plaintiff's motor repair business in the future as it had in the past, and further to receive compensation in the profits of the motor repair business in which the bailment here was an incident.

■ Defendant's 2nd contention is that the Trial Court erred in finding that defendant was guilty of negligence; and

that plaintiff was not guilty of contributory negligence. If there is any evidence to sustain the Trial Court's finding, we must sustain it. 3–B Tex.Jur. 438. We have reviewed this record and conclude that the Trial Court's findings in these respects are amply sustained.

All of defendant's points are overruled and the judgment of the Trial Court is affirmed.