**YOAKUM GRAIN, INC., Appellant,**

v.

**ENERGY INDUSTRIES, INC., Appellee.**

No. 820.

Court of Civil Appeals of Texas, Corpus Christi.

May 31, 1974.

Rehearing Denied June 27, 1974.

H. T. Hermansen, Jr., Dyer, Redford, Burnett, Wray & Woolsey, Corpus Christi, for appellant.

Harry F. Maddin, Allison, Maddin, White & Brin, M. W. Meredith, Jr., Meredith & Donnell, Corpus Christi, for appellee.

## OPINION

YOUNG, Justice.

This is a bailment case. As a result of a collision between two trucks which caused damage to a twenty-nine ton gas compressor package one of them was hauling, the corporate owner of the package sought redress against both corporate truck owners. The package owner, Energy Industries, Inc., sued the carrier, B. F. Walker, Inc., and a third party, Yoakum Grain, Inc.

Walker contracted to transport the package belonging to Energy, but consigned to Humble Oil & Refining Company, from Corpus Christi, Texas, to a destination in Bastrop County, Texas. On October 26, 1970, while laden with Energy's package, the Walker truck and a truck belonging to Yoakum collided on the San Antonio River bridge located on U. S. Highway 183 about one mile south of Goliad, Texas. The package was damaged as were both trucks. Yoakum has cross-claimed against Walker for damages to Yoakum's truck, and Walker has cross-claimed against Yoakum seek-ing indemnity against any judgment taken against it by Energy.

Trial was to a jury which found that the collision was proximately caused by several acts of negligence of each Walker and Yoakum. Discovered peril issues were also submitted and findings were made in favor of Walker and against Yoakum. However, the trial court granted Yoakum's motion to disregard the discovered peril findings. The trial court entered a judgment holding that Yoakum and Walker were jointly and severally liable for Energy's damages in the amount of $17,716.00, awarding such damages and interest thereon from the date of loss, and denying Yoakum's cross-claim for damages. Both defendants have appealed.

As noted above, the collision occurred on the San Antonio River bridge. The Walker truck, traveling north, was carrying the package which constituted an oversize load as its width was greater than that of the truck. Walker previously had secured a permit from the Texas Highway Department to move the oversize load over state highways. Walker's truck was on the bridge and apparently just barely moving, or stopped, when Yoakum's truck, also traveling north, attempted to pass. Yoakum's truck carrying a tank loaded with molasses struck the package being hauled by the Walker truck and caused the damages which are the subject of this suit.

In response to the special issues submitted (28 in number) the jury: (1–5) found that the collision was proximately caused by the negligence of Walker in failing to station a flagman 300 feet to the rear of the permitted load, and in moving the permitted load across the bridge in less than full daylight; (6–10) refused to find that Walker's driver was negligent in driving his vehicle to the left side of the road, or that the Walker truck was stopped on the bridge at the time of the accident; (11–19) found that the collision was proximately caused by the negligence of Yoakum's driver in failing to keep a proper lookout,

driving at excessive speed, failing to make proper application of his brakes, but that none of these acts of negligence was the sole proximate cause of the collision; (20–22) refused to find that Yoakum's driver was negligent in driving his vehicle to the left side of the roadway while approaching within 100 feet of the bridge; (23–27) found that Yoakum's driver discovered Walker's truck in a position of peril and realized that it probably would not be extricated, that the discovery and realization were made at such time that he could have avoided the collision by the exercise of ordinary care, that he failed to exercise ordinary care in the use of the means available to him to avoid the collision, and that such failure was a proximate cause of the collision; (28) found the amount of $17,716.00 as the reasonable cost of repairs necessary to restore Energy's package.

Appellant Yoakum, in its sole point of error, asserts that the trial court erred in entering judgment jointly and severally against Walker and Yoakum because: (1) a bailor-bailee relationship existed between Energy and Walker; (2) the negligence of Walker therefore should have been imput-' ed to Energy; (3) Walker's negligence thereby became Energy's contributory negligence; (4) any recovery against Yoakum consequently became barred. Appellant Yoakum is correct in that if a bailor-bailee relationship exists, then bailor cannot recover for damage to its personal property transported in bailee's truck colliding with third parties' truck, where the collision was caused by negligence of both bailee and third party. This is so because bailee's negligence would then be imputed to bailor. Rose v. Baker, 138 Tex. 554, 160 S.W.2d 515 (1942).

■ This brings us to the determination of whether Energy, for purposes of this case, was a bailor. Walker admits that it was the bailee of the package, but declines to enter the bailor controversy between Energy and Yoakum. From the sources defining bailment we find that the basic el-

ements are: (1) delivery of personal property by one person to another in trust for a specific purpose and acceptance of such delivery; (2) an express or implied contract that the trust will be carried out and the property returned to the bailor or dealt with as he directs. See Bill Bell, Inc. v. Ramsey, 284 S.W.2d 244 (Tex.Civ.App.—Waco 1955, n. w. h.); 8 C.J.S. Bailments § 1.

■ In our case there were no special issues submitted concerning the existence of a bailor-bailee relationship between Energy and Walker. But Yoakum contends that this relationship existed as a matter of law. For this position Yoakum relies on the Request for Admissions directed to Energy pursuant to Rule 169, Texas Rules of Civil Procedure as follows:

"1. That 'Exhibit A' attached hereto is a genuine copy of the Bill of Lading pertinent to shipment of the gas compressor package referred to in Paragraph II of your First Amended Original Petition.

2. That Energy Industries, Inc. was in fact the shipper named in 'Exhibit A.' "

To which request Energy answered:

"1. Said Plaintiff admits the statements contained in Requests Nos. 1 and 2."

The bill of lading sets out Energy as "Shipper" and Humble as being the party to whom the package is consigned. It also states that the package was received at 1325 So. Padre Island Drive on October 26, 1970, from Energy. It bore the signature "George Nix". However the capacity in which George Nix signed is not clear on the bill of lading. Apparently, he was a representative of Walker because there appears "Signed: B. W. Walker, Inc. By: George Nix (written signature)" on the oversize load permit issued by the Texas Highway Department.

From the contents of the bill of lading and the related admissions of Energy, Yoakum reasons that Energy was a bailor

because of its being the shipper. Yoakum cites as authority 11 Tex.Jur.2d Carriers § 248, which cites as authority Davies v. Texas Cent. R. Co., 62 Tex.Civ.App. 599, 133 S.W. 295 (—Austin 1910, n. w. h.). In *Davies* there was no issue as to who was the bailor. We do not accept *Davies* as authority that party designated as a shipper on a bill of lading is always a bailor.

On the matter of the admissions, Energy contends that it only admitted that it was in fact the *shipper named* in the bill of lading, not that it was in fact *the shipper*. From the inception of this suit, Energy has disputed the existence of the relationship of bailor-bailee between itself and Walker. In Energy's pleadings, it is there alleged that Humble had employed Walker to transport the package to Humble's Hilbig Oil Unit No. 1 Lease, Bastrop County. Energy offered the testimony of its secretary-treasurer, T. J. Taylor, to the effect that the package was leased to Humble (with an option to buy); that Humble contracted with Walker to transport the package; that Humble took possession of the package at Energy's yard; that the bill of lading was prepaid. We also note that there is no showing that a representative of Energy acknowledged the bill of lading by signature, although there is a blank designated on the document for such a signature.

We hold that the admission of Energy and the testimony of its officer, Taylor, raised a question of fact whether Energy was Walker's bailor. As we have noted, no special issues were submitted to the jury in that regard and none were requested. So, the inquiry evolves to who had the burden to obtain appropriate jury findings.

By virtue of Rule 279, T.R.C.P., an independent ground of recovery or defense not conclusively established by the evidence is waived if no issue thereon is given or requested. Glens Falls Insurance Co. v. Peters, 386 S.W.2d 529 (Tex.Sup. 1965). Contributory negligence is such an independent ground of defense. Rule 94, T.R.C.P. It follows that if a defendant seeks to escape liability for his own negligence by imputing the contributory negligence of another tort-feasor to a nonnegligent plaintiff, that defendant has the burden of obtaining jury findings sustaining the relationship necessary to apply the doctrine of imputed negligence to that plaintiff. For analogous application of imputed negligence in the field of joint enterprise, see Miller v. Ender, 295 S.W.2d 294 (Tex.Civ.App.—Eastland 1956, n. r. e.); Simpson v. Barham, 292 S.W.2d 874 (Tex. Civ.App.—Amarillo 1956, n. w. h.); Buss v. Robison, 255 S.W.2d 339 (Tex.Civ.App.— Amarillo 1952, n. r. e.). We hold that Yoakum, by its failure to request jury issues inquiring whether Energy was a bailor, has waived its alleged imputed contributory negligence ground of defense against Energy. Yoakum's point of error is overruled.

We next examine Walker's contentions in its three cross-points. In its first cross-point Walker urges that the trial court erred in entering judgment against it, or in failing to grant indemnity to it, for the reason that the discovered peril findings were improperly disregarded inasmuch as Walker had an independent cause of action against Yoakum in its capacity as bailee.

In determining whether the discovered peril issues were properly disregarded we must first determine whether the doctrine can be applied as between joint tort-feasors. The leading Texas case pertaining to this question is Kimbriel Produce Co., Inc. v. Mayo, 180 S.W.2d 504 (Tex.Civ.App.—San Antonio 1944, ref'd w. o. m.). There, a bus passenger sued to recover damages for personal injuries which he received when the bus on which he was riding collided with a truck owned by Kimbriel Produce Company. The jury found the bus driver and the truck driver each to be negligent. The trial court refused to submit Kimbriel's discovered peril issues and found joint and several liability as to both defendants. On appeal Kimbriel

contended much the same as Walker does in the case at bar, to wit:

that the trial court erred in its refusal to submit the discovered peril issues (in our case the discovered peril findings were disregarded) upon which judgment against the bus driver alone should have been entered, or alternatively, judgment against Kimbriel and the bus driver with full indemnity in favor of Kimbriel. In affirming the judgment of the trial court, Justice Norvell declined to apply the doctrine of discovered peril as between joint tortfeasors. Justice Norvell stated at pp. 508–509:

> The application of the doctrine of discovered peril is now largely a matter of precedent in this State. No Texas case is cited wherein the principles of the doctrine have been recognized as a test of liability as between two defendants both of whom are negligent. It seems that liability as between alleged tort-feasors for injuries sustained by a nonnegligent plaintiff is determined by the issues of 'proximate cause' or 'sole proximate cause,' which in this case were submitted by the trial court to the jury. It is stated categorically in American Jurisprudence, that, 'Of course, the doctrine (of discovered peril) can not be invoked as between defendants concurrently negligent.' 38 Am.Jur. 912. See also Shield v. F. Johnson & Son Co., 132 La. 773, 61 So. 787, 47 L.R.A.,N.S., 1080.

> \* \* \* \* \* \*

> We decline to extend the doctrine into the field of tort-feasors, either as a test of whether or not one of them only is liable to the plaintiff, or as a test to determine whether or not one of them is entitled to a judgment of full indemnity over against the other. . . ."

We hold that *Kimbriel* is here controlling because of the posture of the case at bar: i. e., Energy sued Walker and Yoakum as joint tort-feasors; the jury found that acts of negligence on the part of each of the defendants proximately caused Energy's damages; the jury refused to find that any acts of negligence of Yoakum was the *sole proximate cause* of Energy's damage. Whether Walker had an independent cause of action, as bailee, against Yoakum becomes immaterial because that issue was not pleaded nor tried nor decided in the trial court. The trial court was correct in disregarding the discovered peril findings for the reason that the discovered peril doctrine is just not available nor appropriate to adjust the rights of joint tort-feasors, Walker and Yoakum here. See Union Iron and Metal Company v. Gibson, 374 S.W.2d 458 (Tex.Civ.App.—Texarkana 1963, n. r. e.); Texas Bus Lines v. Whatley, 210 S.W.2d 626 (Tex.Civ.App.—Galveston 1948, n. r. e.). Walker's first cross-point is overruled.

■ Walker's final two cross-points are that there is no evidence to support the jury's findings as to proximate cause on the part of Walker, or in the alternative, that there is insufficient evidence to support those jury findings. The rules governing consideration of no evidence and insufficient evidence have been set out innumerable times. These rules have been concisely and clearly stated by the Honorable Robert W. Calvert, "No Evidence" and "Insufficient Evidence", 38 Tex.L.Rev. 359 (April 1960). These familiar rules require us to review the entire record in the case before us. We, therefore, analyze all of the evidence on both sides of the issues in a brief and general way.

■ On the approach of the San Antonio River bridge from the south there is a hill, the summit of which is between two-tenths and three-tenths of a mile from the bridge. From the top of the hill, the bridge to the north is in full view.

For the purpose of transporting the package, Walker had secured from the Texas Highway Department a document entitled "Application and Permit To Move Super Heavy Or Oversize Equipment Or Load Over State Highways". This docu-

ment was stamped with a special condition which reads:

"Full Daylight Movement Only, and then only when visibility is good and highway shoulders firm. No part of the load or equipment to extend over the center of pavement except over narrow structures or short narrow sections where traffic shall be flagged 300′ in front and rear of the load. This load shall not follow another over-width load closer than 1000′. Non-compliance of the above restrictions nullifies permit".

Rodolpho Garza was the driver of the Walker truck. Garza's wife drove her car a short distance (estimated to be about twenty feet) behind the Walker truck. As the truck and car approached the summit of the hill, a pickup truck driven by Joseph D. Fredericks pulled up behind the Garza car. Fredericks had previously turned on his lights, he said, and it was completely dark by the time he got close to the bridge. According to Fredericks, he, the Garza car and the Walker truck moved slowly down the hill in somewhat of a slow procession approaching the bridge; that in his rearview mirror he saw the lights of the Yoakum truck coming over the hill overtaking them; that as the Walker truck moved onto the bridge, the Yoakum truck passed him and the Garza car and then struck the package protruding into the left lane as it was being carried across the bridge in the Walker truck; that there was not enough room between the left side of the package and the left side of the bridge span for the Yoakum truck to pass to the left of the Walker truck.

There was testimony from Walter G. Clements, driver of the Yoakum truck, that he was driving at about fifty miles an hour when he came over the hill; that then he saw two red taillights that appeared to be in the center of the bridge, so he began to slow down; that with his lights on low beam, he saw he was gaining on whatever was on the bridge; that he put on his bright lights and started to apply his brakes; that he then saw that the bridge was full of machinery, whereupon he cut to the left and attempted to cross the bridge because he could not stop in time to avoid striking the Walker truck from the rear.

In summary, we are confronted with a record showing a truck, laden with a package which extended over the center line of a two lane bridge, attempting to cross that bridge without the aid of flagmen at a time of darkness or near darkness. Thus, in spite of a special condition attached to Walker's permit requiring that movement of the oversize equipment be made in full daylight only and that traffic be flagged 300 feet in front and rear of the load, movement across the bridge was made by the Walker truck in less than full daylight and without the aid of flagmen. We believe that the jury was entitled to find that in crossing the bridge, movement in full daylight and flagmen were required of Walker. Considering the size of the load and the slow speed of the truck, a jury could reasonably infer that it was foreseeable that just such an accident as did occur could occur.

Walker argues that this accident could not have happened unless Clements, Yoakum's driver, violated the law, i. e., passing to the left of vehicles crossing over a bridge; that Walker's driver thus was not required to foresee that Clements would violate the law. Regarding foreseeability, a necessary element of proximate cause, a person is generally not required to anticipate the negligence of another, but he is not excused from liability because some other person was also negligent, and such negligence contributed to the damages complained of. Kimbriel Produce Co. v. Mayo, supra. Further, Yoakum's truck could have been approaching the bridge from the other direction, north, and could have attempted to pass the Walker truck on the bridge. Likely, similiar results to the package would have obtained because there was not room to pass. In these circumstances no such violation of law would

be a factor. The foreseeable test is not whether the negligent actor could anticipate the particular event that happened, but whether he ought reasonably to have foreseen that the event in question or some similar event would occur. Clark v. Waggoner, 452 S.W.2d 437 (Tex.Sup.1970). Walker's second and third cross-points are overruled.

The judgment of the trial court is affirmed.