Office of the Attorney General · State of Texas

October 3, 2001

Mr. Ron Allen
Executive Director
Texas Board of Veterinary Medical Examiners
333 Guadalupe, Suite 2-330
Austin, Texas 78701-3998

Opinion No. JC-0421

Re: Whether a veterinarian may refuse to return an animal if its owner is unable or unwilling to pay for the veterinary medical services rendered, and related questions (RQ-0378-JC)

Dear Mr. Allen:

You have requested our opinion regarding the options available to a veterinarian if the owner of an animal is unable or unwilling to pay for veterinary medical services rendered to the animal. For the reasons explained below, we conclude that the veterinarian has a lien on an animal for whom he has rendered medical services, but that the lien is not possessory. Furthermore, such an animal may not be considered "abandoned" for purposes of section 801.357 of the Texas Occupations Code so long as the owner makes a good faith effort to reclaim it.

You first ask whether a veterinarian may refuse to return an animal to its owner if the latter is unable or unwilling to pay for the veterinary medical services rendered. For purposes of this question, we assume that the veterinarian has not mailed the notice required by section 801.357 of the Occupations Code. *See* discussion *infra* pp. 4-5.

Domestic animals are deemed to be personal property in Texas. *Bueckner v. Hamel*, 886 S.W.2d 368, 370 (Tex. App.–Houston [1st Dist.] 1994, writ denied). The delivery by the owner of an animal into the custody of a veterinarian for purposes of receiving medical care is in the nature of a bailment. Four elements are necessary to create a bailment: (1) the delivery of personal property by one person to another in trust for a specific purpose; (2) acceptance of such delivery; (3) an express or implied contract that the trust will be carried out; and (4) an understanding under the terms of the contract that the property will be returned to the transferor or dealt with as the transferor directs. *Yoakum Grain, Inc. v. Energy Indus., Inc.*, 511 S.W.2d 95, 98 (Tex. Civ. App.–Corpus Christi 1974, no writ). A mere bailment does not in itself create a lien on property in the possession of the bailee. *See Alice Pipe & Supply Co. v. Harroun*, 195 S.W.2d 852, 854 (Tex. Civ. App.–San Antonio 1946, writ ref'd n.r.e.) (once purpose of bailment is fulfilled, bailee has obligation to return bailed property to owner, even in the absence of express requirement to do so). Thus, we must determine whether a veterinarian holds a lien on an animal delivered to him for the

purpose of medical treatment. Five types of lien are recognized in Texas: (1) contractual; (2) constitutional; (3) common law; (4) statutory; and (5) equitable. *See* 50 TEX. JUR. 3D *Liens* §§ 2, 12, 41 (2000).

A lien may be created by contract. Creation of a contractual lien results from the language of the contract, and is based upon the intent of the parties. *Inwood N. Homeowners Ass'n v. Harris*, 736 S.W.2d 632, 634 (Tex. 1987). The language need not be explicit, but may be inferred from the parties' statements and conduct. *Edinburg Theatres, Inc. v. Richter*, 367 S.W.2d 354, 356 (Tex. Civ. App.–San Antonio 1963, no writ). If the veterinarian and the owner of the animal create a lien on the animal by contract, they may include therein any conditions not prohibited by law, including a provision that the veterinarian may refuse to return possession of the animal until all charges have been paid. You do not indicate that you are concerned about liens created by contract.

Article XVI, section 37 of the Texas Constitution provides that "[m]echanics, artisans and material men, of every class, shall have a lien upon the buildings and articles made or repaired by them for the value of their labor done thereon, or material furnished therefor." TEX. CONST. art. XVI, § 37. A lien created under article XVI, section 37 extends to artisans who repair or otherwise enhance the value of personal property. *Christian v. Boyd*, 222 S.W.2d 157, 160 (Tex. Civ. App.–Fort Worth 1949, no writ). A veterinarian has never been held to be a "mechanic, artisan or material man" for purposes of this constitutional provision. In *Cotton Belt State Bank, Timpson v. Roy H. Hatcheries, Inc.*, 351 S.W.2d 325, 326 (Tex. Civ. App.–Waco 1961, no writ), the court said that a person whose business it was to custom-hatch eggs was not entitled to a lien under article XVI, section 37. In our opinion, the same may be said for veterinarians.

A common-law lien is a right in one person to retain that which is in his or her possession, but belongs to another, until certain demands of the person in possession are satisfied. *City of Ingleside v. Johnson*, 537 S.W.2d 145, 152 (Tex. Civ. App.–Corpus Christi 1976, no writ). This kind of lien arises by implication of law and is founded generally on the right to the lien as a result of the established usage of a particular trade. *Id.* Many of the cases recognizing common-law liens in Texas relate to the banking industry. *See, e.g., San Felipe Nat'l Bank v. Caton*, 668 S.W.2d 804, 805 (Tex. App.–Houston [14th Dist.] 1984, no writ). You do not indicate, and we have found no information that would suggest, that common-law possessory liens are part of the "established usage" of the veterinary profession.

The fourth category of liens consists of those created by statute. Although statutory liens do not require possession in order to be effective, many of them are deemed by statute to be possessory. *Byrne v. Williams*, 45 S.W.2d 336, 339 (Tex. Civ. App.–Amarillo 1931, writ ref'd). Subchapter A, chapter 70 of the Property Code recognizes a number of possessory liens, such as those for laundry and dry cleaning, for storage of motor vehicles, and for items such as dies, molds and patterns left in the custody of a plastic fabricator. *See* TEX. PROP. CODE ANN. §§ 70.002, .004, .009 (Vernon 1995 & Supp. 2001). The only statutory lien potentially relevant to a veterinarian is that created by section 70.003, which provides, in relevant part:

> (a) A stable keeper with whom an animal is left for care has a lien on
> the animal for the amount of the charges for the care.

We have been apprised of no case that suggests that a veterinarian may reasonably be denominated a "stable keeper." A "stable," in the context of housing for animals, is defined as "[a] building fitted with stalls, loose-boxes, rack and manger and harness appliances, in which horses are kept. Formerly used in a wider sense: a building in which domestic animals, as cattle, goats, etc. are kept." XVI OXFORD ENGLISH DICTIONARY 431 (2d ed. 1989). A veterinarian's office would not in most circumstances meet this definition of "stable." We assume for purposes of this opinion that your question refers to veterinarians who do not also operate stables. Furthermore, your question asks us to assume that the veterinarian has performed medical services on an animal. One court has held that a lien under section 70.003 of the Property Code "allows liens for property that is stored, not for property on which work was performed." *Dob's Tire & Auto Ctr. v. Safeway Ins. Agency,* 923 S.W.2d 715, 719-20 (Tex. App.–Houston [1st Dist.] 1996, writ dism'd w.o.j.). We thus conclude that section 70.003, which creates a possessory lien on certain items, does not apply to a veterinarian who performs medical services on an animal.

The last category of liens available in Texas is that of equitable liens. An equitable lien is a right to have particular property subjected to the payment of a debt. 50 TEX. JUR. 3D *Liens* § 15 (2000). It is ordinarily based on an implied contract arising out of the relationship of the parties and the circumstances of their dealings. *Richards v. Suckle,* 871 S.W.2d 239, 241-42 (Tex. App.–Houston [14th Dist.] 1994, no writ); *see generally, Houston Nat'l Exch. Bank v. De Blanc,* 247 S.W. 897, 900-01 (Tex. Civ. App.–Beaumont 1923, no writ). The purpose of an equitable lien is to enforce a purchase money obligation not otherwise secured. *GXG, Inc. v. Texacal Oil & Gas,* 977 S.W.2d 403, 427 (Tex. App.–Corpus Christi 1998, pet. denied). It is available only when the claimant has no adequate remedy at law. *Hoarel Sign Co. v. Dominion Equity Corp.,* 910 S.W.2d 140, 143 (Tex. App.–Amarillo 1995, writ denied). In the absence of an express equitable lien, a court may declare that an implied lien exists, based on general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings. *Richards,* 871 S.W.2d at 241-42. Possession ordinarily remains with the debtor in an equitable lien. 50 TEX. JUR. 3D *Liens* § 15 (2000).

After reviewing these five types of lien, we conclude as follows: A veterinarian has neither a constitutional, common-law, nor statutory lien on an animal for which he has performed medical services. A veterinarian has a contractual lien for such services only if his contract with the animal's owner specifically so provides. It follows that a veterinarian, in the usual circumstances, at most holds an equitable lien on the animal for those services. Because an equitable lien is not possessory, a veterinarian may not refuse to return the animal to the owner merely because the owner is unwilling or unable to pay for the medical services rendered. Furthermore, refusal to return the animal may amount to conversion. Conversion "occurs when one who is unauthorized wrongfully assumes and exercises dominion and control over another's property, to the exclusion of the true owner's rights, even though possession of the property may have originally been acquired by lawful

means." *Bosworth v. Gulf Coast Dodge, Inc.*, 879 S.W.2d 152, 158 (Tex. App.–Houston [14th Dist.] 1994, no writ).

You next ask whether a veterinarian may, pursuant to section 801.357 of the Occupations Code, dispose of an animal on the grounds that it has been "abandoned" by the owner. Specifically, you ask us to assume that "the owner makes a good faith effort to arrange with the veterinarian to make installment payments and otherwise insists that he wants the animal returned, but the veterinarian considers such arrangements to be unsatisfactory and refuses to return the animal to the owner."[1] Once again, for purposes of this question, we assume that the veterinarian has not mailed the notice authorized by section 801.357 of the Occupations Code. *See* discussion *infra* pp. 4-5.

"Abandonment is the relinquishment of a right by the owner [of property] with the intention to forsake and desert it." *Tex. Water Rights Comm'n v. Wright*, 464 S.W.2d 642, 646 (Tex. 1971). "The term 'abandoned' . . . is a question of fact to be ascertained from all the facts and circumstances." *Fender v. Schaded*, 420 S.W.2d 468, 473 (Tex. Civ. App.–Tyler 1967, writ ref'd n.r.e.); *see also Lopez v. State*, 797 S.W.2d 272, 273 (Tex. App.–Corpus Christi 1990, writ denied). When the concept is applied to personal property, it includes an intent by the owner to leave the property free to be appropriated by another person. *R.R. Comm'n of Tex. v. Waste Mgmt. of Tex., Inc.*, 880 S.W.2d 835, 843 (Tex. App.–Austin 1994, no writ). Because you have asked us to assume that the owner "makes a good faith effort to arrange with the veterinarian to make installment payments and otherwise insists that he wants the animal returned," we conclude as a matter of law that the owner in such circumstances has not "abandoned" his animal. Request Letter, *supra* note 1, at 1.

We next consider the options available to a veterinarian who has complied with the statutory notice requirements of section 801.357 of the Occupations Code. That statute provides:

> (a) A veterinarian may dispose of an animal that is abandoned in the veterinarian's care if the veterinarian:
>
>> (1) gives the client, by certified mail to the client's last known address, notice of the veterinarian's intention to dispose of the animal; and
>>
>> (2) allows the client to retrieve the animal during the 12 days after the date the veterinarian mails the notice.
>
> (b) A veterinarian may not dispose of an animal under Subsection (a) if:

---

[1]Letter from Mr. Ron Allen, Executive Director, Texas Board of Veterinary Medical Examiners, to Honorable John Cornyn, Texas Attorney General at 1 (Apr. 25, 2001) (on file with Opinion Committee) [hereinafter Request Letter].

> (1) a contract between the veterinarian and client provides otherwise; or
>
> (2) after notice is given under Subsection (a), the veterinarian and client agree to extend the veterinarian's care of the animal.
>
> (c) The client's contact of the veterinarian by mail, telephone, or personal communication does not extend the veterinarian's obligation to treat, board, or care for an animal unless the veterinarian and client agree to extend the veterinarian's care of the animal.
>
> (d) An animal is considered abandoned on the 13th day after the date the veterinarian mails the notice under Subsection (a) unless an agreement is made to extend the care for the animal.
>
> (e) Notice given by a veterinarian under Subsection (a) does not relieve a client of liability to pay for treatment, boarding, or care provided by the veterinarian.

TEX. OCC. CODE ANN. § 801.357 (Vernon 2001). Subsection (a) of section 801.357 permits the owner to retrieve the animal "during the 12 days after the date the veterinarian mails the notice." The statute does not specify that either payment or a promise to pay is a condition for retrieval during this period. Thus, even if a veterinarian has complied with the statutory notice requirements, he must release the animal to its owner on demand during the first 12 days after mailing the requisite notice, without regard to the owner's inability or unwillingness to pay the accrued charges. As of the 13th day, however, the statute deems the animal to be "abandoned." In that case, the animal may be "appropriated by another person," and accordingly, the veterinarian may dispose of the animal as he sees fit. *R.R. Comm'n of Tex.*, 880 S.W.2d at 843.

You also ask whether, during the period an animal is held by a veterinarian for nonpayment of medical charges, the veterinarian is "obligated to continue medical treatment of the animal if required for the well being of the animal." Request Letter, *supra* note 1, at 1. We note that we have determined that a veterinarian may *not* hold an animal for nonpayment of fees if the owner demands his animal's return. We thus limit our answer to those situations in which the animal's owner has not demanded its return.

In a bailment for the mutual benefit of the parties, and in the absence of a special contract, the bailee is held to an ordinary or reasonable degree of care. *See Trammell v. Whitlock*, 242 S.W.2d 157, 159 (Tex. 1951). Section 42.09 of the Penal Code provides that a person commits a class A misdemeanor [state jail felony] if he, *inter alia*, "fails unreasonably to provide necessary food, care, or shelter for an animal in his custody." TEX. PEN. CODE ANN. § 42.09(a)(2) (Vernon Supp. 2001). One Texas court has said that the term "necessary food" means "food sufficient in both quantity and

quality to sustain the animal in question, and the sufficiency of the quantity in terms of pounds and bushels can only be determined in relation to the quality in terms of nutrition." *Cross v. State*, 646 S.W.2d 514, 516 (Tex. App.–Dallas 1982, writ ref'd). By analogy, we believe that "necessary care" includes whatever medical care is necessary "to sustain the animal in question."

Finally, you ask whether a veterinarian who provides "necessary treatment . . . and also boarding fees" may charge the owner for such services "[d]uring the period that [the] animal is held by the veterinarian for nonpayment of . . . medical fees." Request Letter, *supra* note 1, at 1-2. Again, we note that a veterinarian may *not* hold an animal for nonpayment of fees if the owner demands the animal's return. As discussed above, when the veterinarian has furnished notice to the animal's owner in accordance with section 801.357 of the Occupations Code, the statute itself provides that such notice "does not relieve a client of liability to pay for treatment, boarding, or care provided by the veterinarian." Even when a veterinarian has not provided notice, we believe it is clear that because a veterinarian is obligated by law to provide necessary care to the animal, including medical and boarding services, he may recover from the owner expenses for performing those services, and that he may have an equitable lien on the animal for payment. As previously noted, the purpose of an equitable lien is "to enforce a purchase money obligation not otherwise secured." *GXC, Inc.*, 977 S.W.2d at 427. Thus, a veterinarian who provides "necessary treatment" to an animal in his custody is entitled to recover from the owner the veterinarian's reasonable charges for performing that treatment, as well as boarding fees.

### S U M M A R Y

If a veterinarian has complied with the notice requirements of section 801.357 of the Texas Occupations Code, he must, during the first 12 days after mailing the notice, release to the owner upon demand an animal for which he has performed veterinary medical services, without regard to the inability or unwillingness of the owner to pay the accrued charges. On the 13th day after the veterinarian has mailed the notice, the animal is deemed "abandoned," and the veterinarian may dispose of the animal as he sees fit. If the veterinarian has not complied with the statutory notice requirements, he may not at any time refuse to return the animal to its owner upon demand. A veterinarian may have an equitable lien on an animal for which he has performed medical services, but such lien is not possessory. A veterinarian is required by both common and criminal law to continue medical treatment for an animal in his custody if such care is required for the animal's well-being. A veterinarian who provides necessary treatment to an animal in his custody is entitled to recover from the owner the veterinarian's reasonable expenses in performing that treatment and boarding the animal.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

HOWARD G. BALDWIN, JR.
First Assistant Attorney General

NANCY FULLER
Deputy Attorney General - General Counsel

SUSAN D. GUSKY
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee