Reversed and Rendered, in Part; Reversed and Remanded, in Part; and
Opinion filed August 23, 2007








Reversed
and Rendered, in Part; Reversed and Remanded, in Part; and Opinion filed August
23, 2007.

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-06-00028-CV

_______________

 

LONE STAR HEAT TREATING CO., LTD., Appellant

 

V.

 

LIBERTY MUTUAL FIRE INSURANCE COMPANY, Appellee

                                                                                                                                               


On Appeal from the 165th District Court

Harris County, Texas

Trial Court Cause No. 04-68598

                                                                                                                                               


 

O P I N I O N

In this
insurance coverage dispute, appellant, Lone Star Heat Treating Co., Ltd. (ALone Star@) appeals from an order granting
summary judgment in favor of appellee, Liberty Mutual Fire Insurance Company (ALiberty Mutual@) and denying Lone Star=s motion for summary judgment.  In
three issues, Lone Star contends it is entitled to damages for breach of
contract, a statutory penalty, and attorney=s fees because  the exclusion upon
which Liberty Mutual relied to deny coverage is not applicable.  We
reverse and render in part and reverse and remand in part.








I.  Background

Lone
Star is a Texas limited partnership engaged in the business of heat treating
metals.  Typically, customers ship products to Lone Star for treatments and
retrieve them after the work is completed. Lone Star usually operates three
shifts per day: 7:00 a.m. to 3:00 p.m.; 3:00 p.m. to 11:00 p.m.; and 11:00 p.m.
to 7:00 a.m.  During the relevant time period, most customers retrieved their
materials during the first shiftCwhen Lone Star=s administrative staff was present. 
However, customers sometimes retrieved materials during the second shift.  Only
a few employees worked the second shift.  Lanis Roberts was the senior employee
during the second shift.

When a
customer retrieved materials after 5:00 p.m., it usually made advance
arrangements and the documentation was left for Roberts. However, without
advance notice, customers occasionally sent a truck driver to retrieve products
after 5:00 p.m.  In that situation, Roberts was required to call the shipping
and receiving manager, Danny Bierman, or Bierman=s supervisor, Dexter Wilson, to
determine whether materials should be released to the Apick-up person.@  If Roberts received instructions to
release the material, he was required to obtain appropriate documents from the Apick-up person.@

On
September 28, 2004, a man who identified himself as ARobert Smith@ appeared at Lone Star=s loading dock.  Smith pointed out two
pallets of steel he was purportedly sent to retrieve.  Smith told Roberts that
Danny Bierman knew about the matter.  Roberts stated that he could not release
the materials without proper documentation.  Smith offered to write and sign a
ticket.  When Roberts requested the identity of Smith=s customer, he replied ABaker.@  After Smith signed the ticket,
Roberts permitted Smith to take the two pallets of steel.  This steel was not
owned by ABaker.@  It was owned by two different Lone Star customers. Lone Star never
identified ARobert Smith,@ and the steel was  not recovered.  Therefore, Lone Star paid
both customers the value of their steel.








At the
time of this incident, Liberty Mutual insured Lone Star under a ACommercial Policy.@  Under the BASIC COVERAGE FORM, the
policy covers, among other interests, APersonal Property of Others for which
you are liable when in your actual or constructive custody.@  Lone Star made a claim against
Liberty Mutual for its loss of $78,723.85, representing the value of the steel
less the policy deductible.  Liberty Mutual denied the claim based on a Adishonesty exclusion.@

Lone
Star sued Liberty Mutual, alleging it breached the policy and violated former
article 21.55 of the Texas Insurance Code by failing or refusing to timely pay
the claim.  Lone Star and Liberty Mutual each filed a motion for summary
judgment.

On
December 9, 2005, the trial court signed a final judgment, granting Liberty
Mutual=s motion for summary judgment,
denying Lone Star=s motion for summary judgment, and ordering that Lone Star
take nothing relative to its claims against Liberty Mutual.

  II.   Standard of Review 

Under
well-established standards governing a traditional motion for summary judgment,
the movant must show that there is no genuine issue as to any material fact and
it is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Nixon v. Mr. Prop.  Mgmt. Co.,
690 S.W.2d 546, 548 (Tex. 1985).  We review a summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  We take as true
all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.  Id.  When, as here,
both parties move for partial summary judgment on the same issues and the trial
court grants one motion and denies the other, we consider the summary judgment
evidence presented by both sides, determine all questions presented, and render
the judgment the trial court should have entered.  Id.








Although
the insured bears the initial burden to prove its claim falls within the scope
of coverage afforded by the policy, the insurer bears the burden to prove an
exclusion precludes coverage.  Lennar Corp. v. Great Am. Ins. Co., 200
S.W.3d 651, 663 (Tex. App.CHouston [14th Dist.] 2006, pet. filed) (citing former statute
replaced by current version); Comsys Info. Tech. Servs., Inc. v. Twin City
Fire Ins. Co., 130 S.W.3d 181, 193 (Tex. App.CHouston [14th Dist.] 2003, pet.
denied); Evergreen Nat=l Indem. Co. v. Tan It All, Inc., 111 S.W.3d 669, 675 (Tex. App.CAustin 2003, no pet.); see Tex. Ins. Code  Ann. ' 554.002 (Vernon Supp. 2006). 

The
traditional rules for construction of contracts are applicable when we
interpret an insurance contract.  Trinity Universal Ins. Co. v. Cowan,
945 S.W.2d 819, 823 (Tex. 1997); Forbau v. Aetna Life Ins. Co., 876
S.W.2d 132, 133 (Tex. 1994).  When construing a contract, our primary concern
is to give effect to the written expression of the parties= intent. Forbau, 876 S.W.2d at
133.  We are bound to read all parts of a contract together to ascertain the
agreement of the parties. Id.  When terms are defined, those definitions
control interpretation of the policy. Trinity Universal Ins. Co., 945
S.W.2d at 823.  If we can give a contract only one reasonable meaning, the
contract is not ambiguous and we will enforce it as written.  See State Farm
Fire & Casualty Co. v. Vaughan, 968 S.W.2d 931, 933 ( Tex. 1998).  Any
ambiguity must be evident from the policy under scrutiny, and we may not
consider extrinsic evidence unless the language is ambiguous.  Fiess v.
State Farm Lloyds, 202 S.W.3d 744, 747 (Tex. 2006).           

    III.   The ADishonesty Exclusion@

The
Liberty Mutual BASIC COVERAGE FORM has the following exclusionary language:

We will not pay for Aloss@ caused
directly or indirectly by any of the following:

Such Aloss@ is excluded
regardless of any other cause or event that contributes concurrently or in any
sequence to the Aloss.@

D.
Dishonesty:








Dishonesty
or criminal acts by you, any of your partners, employees, directors, trustees,
authorized representative or anyone to whom you entrust the property for any
purposes:

(1)       Acting alone or with others; or

(2)       Whether or not occurring during the hours of employment;

This exclusion does not apply to acts of vandalism by
your employees; however, theft by employees is not covered.

A.        Lone Star=s Contentions

In its
first two issues, Lone Star contends Exclusion D does not preclude coverage for
its property theft claim. Lone Star contends that Ayou@ in Exclusion D refers only to Lone
Star and does not include its employees.  Thus, Lone Star argues that the
exclusion is inapplicable because Lone Star did not entrust the property
to Smith.  In its motion for summary judgment, Lone Star asserted that the
exclusion is unambiguous and must be construed in favor of Lone Star, or
alternatively, if the exclusion is ambiguous, it must be construed in Lone Star=s favor.                                                 

Lone
Star offers several reasons why Ayou@ in Exclusion D does not include its
employees.  Lone Star compares the second phrase which begins after the Aor@ conjunction. The first phrase
applies to dishonesty or criminal acts by Ayou, any of your partners, employees,
directors, trustees, authorized representative.@  In contrast, the second phrase
pertaining to entrustment precludes coverage for dishonesty and criminal acts
by Aanyone to whom you entrust the
property for any reason . . .@  

Lone
Star further argues that Ayou@ is specifically defined as ALONE STAR HEAT TREATING CO. LTD.@ Relative to the risk associated with
entrustment of insured property, Lone Star asserts that Liberty Mutual has
expressly distinguished between the Named Insured and its Aemployees.@








In
interpreting the word Ayou,@ Lone Star asks the court to distinguish third party
negligence claims that involve vicarious liability, from traditional insurance
contract and agency law. Lone Star then refers the court to statutes governing
conduct of business for limited partnerships and suggests that its president,
who is the general partner, should be denominated as the only agent who
can represent and bind Lone Star.  Consequently, Lone Star contends it did not
entrust the property to Robert Smith because employee Roberts was not
authorized to Ahand over@ customer material to Robert Smith. 

B.        Liberty Mutual=s Contentions

Liberty
Mutual first contends the policy should be construed Ain light of surrounding circumstances@ and suggests that the disagreement
between the parties is not about Awhat the policy means, it is about
whether Lone Star entrusted the property to Robert Smith.@   Secondarily, and converse to its
first contention, Liberty Mutual contends Exclusion D is unambiguous and the
rule of strict construction in favor of the insured is not applicable. 
However, the major thrust of Liberty Mutual argument is that a corporation can
only act through its employees; thus, Ayou@ necessarily includes Lone Star=s employees. Accordingly,  Liberty
Mutual asks this court to resolve the coverage question by deciding whether a
Lone Star employee=s act, Ain the course and scope of his employment, was attributable
to Lone Star.@ 

C.        Analysis








Liberty
Mutual insured Lone Star against Adirect physical loss@ as defined in the policy unless such
loss is excluded.  The BASIC COVERAGE FORM provides first party coverage and
under, Part 1 AINTEREST AND PROPERTY COVERED,@ subsection A (4), Liberty Mutual
agreed to cover Ayour@ (the named insured=s) insurable interest in APersonal Property of Others for which
you are liable when in your actual or constructive custody.@ Under subsection A(6) APersonal Property in transit@ is included under INTEREST AND
PROPERTY COVERED. There is precatory language at the top of the BASIC COVERAGE
FORM instructing the reader to refer to GENERAL POLICY CONDITION 31 for
definitions. Under general condition 31-O,  Personal Property in transit, AMeans coverage on Personal Property
from the time it leaves the original point of shipment until it is delivered at
destination.@ The period of time when coverage is applicable for property in transit
includes: A(1) While the property is in your care, custody or control; (2) While the
property is in the care, custody or control of hired carriers***.@  Under the stipulated facts, the
property in question was in the named insured=s care, custody or control when it
was removed from the loading dock. 

In
determining whether Liberty Mutual was entitled to summary judgment, we must
resolve the following issues: (1) whether AYou@ as defined in the policy includes
employees of the Named Insured; and (2) whether Roberts=s unauthorized act of entrustment, in
furtherance of the business of Lone Star, is attributable or imputable to Lone
Star.  Stated differently, Liberty Mutual is entitled to summary judgment if
the policy definition of AYou@ includes employees while acting in furtherance of Lone Star=s business or, if Roberts=s act of entrustment is attributable
or imputable to Lone Star. 

 Liberty
Mutual=s Commercial Policy has multiple
features and forms.  It is so voluminous that it begins with a five-page
reference index.  After the index, there are two introductory forms entitled
SPECIAL POLICY CONDITIONS and GENERAL POLICY CONDITIONS. On the SPECIAL POLICY
CONDITIONS form, we find the following language in paragraph 1:

WORDS WITH SPECIAL MEANING

Throughout this Policy:

A.  The words you, your and
yourself refer to the NAMED 

                            INSURED shown in ITEM 1 of
the policy DECLARATIONS

B.  The words we, us and our
refer to the Company providing

                            this insurance; and 

C.  Other words and phrases that appear
within quotations marks 

                            have special meaning. 
Refer to GENERAL POLICY 

                            CONDITION 31 titled
DEFINITIONS or the DEFINITIONS








                           
section of any form or endorsement attached to the policy.    

In the
BASIC COVERAGE FORM, Liberty Mutual included Aemployees@ in the first phrase of Exclusion D
and did not include employees in the entrustment phrase.   A plain reading of
the policy as a whole, militates the conclusion that Ayou@ does not include the Named Insured=s employees. Liberty Mutual
unambiguously defined Ayou@ as the Named Insured, ALONE STAR HEAT TREATING CO. LTD.,@ and we must duly regard defined
terms as controlling when interpreting policy provisions. Trinity Universal
Ins., 945 S.W.2d at 823. We would violate this important rule of
construction if we otherwise concluded that Ayou@ includes employees. 

To
determine whether coverage is applicable under the BASIC COVERAGE FORM, we are
bound to read all parts of the policy together to ascertain the agreement of
the parties.  See Forbau, 876 S.W.2d at 133. We note the same
exclusionary language pertaining to dishonesty that  appears under Exclusion D
in the BASIC COVERAGE FORM also appears in the ACCOUNTS RECEIVABLE COVERAGE
FORM and the VALUABLE PAPERS AND RECORDS COVERAGE FORM.  Throughout the policy,
Liberty Mutual consistently included Aemployees@ in the first phrase, but omitted Aemployees@ from the Ato whom you entrust@ phrase. 

Significantly,
Liberty Mutual included the following language in the  COMPREHENSIVE ELECTRONIC
SYSTEMS COVERAGE FORM under Exclusion C:

                       Dishonest, fraudulent or
criminal acts by:

                        (1) you, any partner,
director, officer, trustee, or agent;

(2) others who have an interest in the
property;

(3) others to whom you entrust the
property; or

(4) employees of (1) (2), or (3)
whether or not they are at work

 








This language is
consistent with the Aspecial meaning@ and definition of AYou@ expressed on the SPECIAL POLICY
CONDITIONS form.  Here, Liberty Mutual has clearly delineated between the Named
Insured (Ayou@) and its employees.  We cannot ignore the above provisions because we
are required to read all parts of the contract together to ascertain the
agreement of the parties.  Forbau, 876 S.W. 2d at 133. 

We agree
with Liberty Mutual=s second contention that the policy language in question is
unambiguous.  However, we disagree with Liberty Mutual=s contention that we must consider Asurrounding circumstances@ in interpreting the policy. 
Implicitly, Liberty Mutual asks this court to find latent ambiguity in the
exclusionary language.  See Nat. Union Fire Ins. Co. of Pittsburgh, Pa. v.
CBI Indus. Inc., 907 S.W. 2d 517, 520-21 (Tex. 1995) (explaining latent
ambiguity arises when a contract which is unambiguous on its face is applied to
a fact pattern and an ambiguity appears by reason of some collateral matter). 
Liberty Mutual refers this court to Sun Oil Co. v. Madeley, 626 S.W. 2d
726, 731 (Tex. 1981) to support its Asurrounding circumstances@ argument.  However, the Madeley
court acknowledged that the parol evidence rule applies even to the extent of
prohibiting proof of surrounding circumstances when, by the terms of the
contract, the intent of the parties is so worded that it is not fairly
susceptible to more than one legal meaning or construction.  Id. at 732.
In the context of unambiguous insurance policy provisions, the rule excluding
extrinsic evidence was recently followed by our supreme court.  Fiess,
202 S.W.3d at 747.  Accordingly, we hold that Ayou@ is unambiguously defined in the
policy and does not include the Named Insured=s employees. 

Liberty
Mutual refers this court to American Mfrs. Mut. Ins. Co. v. Schaefer,
124 S.W. 3d 154, 157 (Tex. 2003), and suggests that the entrustment portion of
the dishonesty exclusion is rendered meaningless if we conclude that AYou@ does not include the named insured=s employees.  However, our
interpretation of the policy does not foreclose applicability of Exclusion D
when an employee is authorized by the named insured to entrust property.  The
entrustment portion of the exclusion is applicable when AYou,@ meaning the Named Insured, directs
or authorizes employees to entrust the property. 








Accordingly,
we turn to the second part of this coverage question and determine whether
Roberts=s act of entrustment is imputable to
Lone Star.   It is undisputed that Lone Star entered into bailment agreements. 
Lone Star=s loss occurred because of its liability as a bailee of property.[1] 
In its brief, Liberty Mutual provides Areal world@ scenarios and asks the court to
employ the general rule that acts of a corporate agent on behalf of the
corporation are deemed the corporations=s acts.  See Holloway v. Skinner,
898 S.W. 2d 793, 795 (Tex. 1995).  However, the cases Liberty Mutual cites to
support this argument generally pertain to an employer=s liability for damage or injury to
third parties when caused by the conduct of an employee or agent.  In Durand
v. Moore, 879 S.W.2d 196 (Tex. App.CHouston [14th Dist.] 1994,
no writ), the court discussed the respondeat superior doctrine as it pertained
to an employer=s liability for an assault; See also  Hedley Feedlot, Inc. v.
Weatherly Trust, 855 S.W. 2d 826 (Tex. App.CAmarillo 1993,
writ denied) (pertaining to imputation of liability from agent to principal
because of alleged misrepresentations).  Courts employ vicarious liability and respondeat superior
doctrines, when imputing liability to an employer for acts or omissions of
employees.  These doctrines are applicable in determining an employer=s liability to third parties, even if
the employee=s acts were unauthorized.  See GTE Southwest Inc. v. Bruce, 998
S.W.2d 605, 617-18 (Tex. 1999).  








The
pivotal question is whether Lone Star entrusted the property.  In determining
whether Roberts=s unauthorized act of entrustment is imputable to Lone Star,
our focus is not on the three-party relationship between bailors of the steel
material, Roberts and Lone Star.  Considering the policy distinction between
the Named Insured and its employees, we cannot charge the named insured with
conduct that negates or obviates coverage unless the Named Insured engaged in
the conduct.  Accordingly, our focus is on common law doctrines that pertain to
the two- party relationship between employee and employer.  Here, the parties
have stipulated that Roberts was acting as an employee of Lone Star when he
released the materials to Smith.  Consistent with the policy distinction
between the Named Insured and its employees, we must determine whether the
Named Insured actually entrusted the property. Therefore, imputation of Roberts=s act of entrustment is contingent on
whether Roberts had actual authority to entrust the property to ARobert Smith.@  Actual authority includes both
express and implied authority and usually denotes the authority a principal (1)
intentionally confers upon an agent, (2) intentionally allows the agent to
believe he possesses, or (3) by want of due care, allows the agent to believe he
possesses.  2616 South Loop L.L.C. v. Health Source Home Care, Inc., 201
S.W. 3d 349, 356 (Tex. App. CHouston [14th Dist.] 2006, no pet.).  

Therefore,
we consider whether the record contains any summary judgment evidence of Lone
Star=s representations, acts, or omissions
that amount to actual authority for Roberts to entrust the property.  In
Roberts=s affidavit, which was attached to
Lone Star=s Response to Liberty Mutual=s motion for summary judgment, he
averred in paragraph 7 as follows: ANo one had or has ever told me that I
was authorized to hand over customer materials to a trucker without either the
paperwork  from Danny Bierman or approval by telephone from Danny or Dexter, or
from Mike Van Dorfy Jr.@  Roberts=s averment is not controverted in Liberty Mutual=s response to Lone Star=s motion for summary judgment.

The parties stipulated, inter
alia, as follows: 








(1) At the
time this incident occurred, Roberts was the only Lone Star employee on site
who had any authority to release customer loads after 5 p.m., and his authority
was limited to those situations in which he had proper documents from Danny
Bierman, Lone Star=s shipping and receiving manager, or actual verbal
authority from Bierman or his supervisor, Dexter Wilson, (2) Smith also told
Roberts that Danny Bierman, Lone Star=s
Shipping and receiving manager, knew about this matter, (3) Roberts was acting
in his capacity as an employee of Lone Star when he released the materials to
Smith, (4) Roberts entrusted the material in question to Smith, and (5) Prior
to September 28, 2004, Lone Star=s
management acted with a lack of due care in ensuring that Mr. Lanis Roberts
clearly understood that customer products should not leave Lone Star=s facility without clear authorization and completion
of proper paperwork in that Lone Star=s
management was not as careful in setting up and reviewing procedures, related
administrative forms, and training for handling after-hours pick-up as they
should have been.  

 

First,
it is clear from the undisputed summary judgment evidence and stipulations of
the parties that Lone Star did not intentionally confer authority on Roberts to
entrust the property to ARobert Smith.@  Second, we acknowledge Roberts=s uncontroverted averment  that he
knew he was not authorized to entrust the property under the circumstances
presented.  Accordingly, we cannot conclude that Lone Star intentionally
allowed Roberts to believe he had the authority. 

Our
third and final determination relative to actual authority is whether Lone Star
Aallowed@ Roberts to believe he had authority
to release the material through its want of due care.  Here, we must consider
summary judgment evidence and stipulations that appear, at first blush, to be
inconsistent.  The parties stipulated that Smith deceived Roberts into
believing that Danny Bierman knew about his request to take possession of the
material. The parties also stipulated that Lone Star=s management acted with lack of due
care in ensuring that Roberts clearly understood the procedure for after-hours
pick-up.  However, relative to actual authority, the question is whether  Lone
Star=s lack of due care and failure to
ensure Roberts clearly understood that customer products should not leave its
facility allowed or caused Roberts to believe he had authority to entrust the
material.  According to Roberts=s uncontroverted affidavit, he was fully aware of the
conditions that must be fulfilled before he had permission to entrust material
to a third party.  Consequently, the stipulation that Roberts was deceived by
Smith into believing Bierman had granted permission for Smith to take the
material militates the legal conclusion that Lone Star did not give actual
(implied) authority for Roberts to entrust the material to Smith.  Accordingly,
we hold the dishonesty exclusion does not preclude coverage, because Lone Star
did not entrust the property to Smith.








Lone Star=s first and second issues are
sustained.

         IV. Damages, Penalties
and Attorney=s Fees

In its
third issue, Lone Star asserts that it is entitled to recover actual damages,
attorney=s fees, and a statutory penalty under
former Texas Insurance Code Article 21.55.   Act of May 27, 1991, 72nd Leg.,
R.S., Ch. 242, ' 11.03(a), Tex. Gen. Laws 1043 (repealed and recodified 2003)
(current version at Tex. Ins. Code Ann. ' 542.058-060 (Vernon Supp. 2006)). 

Because
we have sustained Lone Star=s first and second issues, we hold Liberty Mutual breached
its contract by failing to timely remit damages claimed by Lone Star. 
Accordingly, the trial court erred by granting Liberty Mutual=s motion for summary judgment and
denying Lone Star=s motion for summary judgment with respect to the breach of
contract claim.  

Liberty
Mutual did not contest Lone Star=s calculation of actual damages in
the amount of $78,723.85.  Therefore, we reverse the judgment in favor of
Liberty Mutual, and render judgment for Lone Star Heat Treating Co., Ltd., in
the amount of  $78,723.85.  We remand with instructions for the trial court to
determine the amount of the statutory penalty and reasonable attorney=s fees prescribed under former Texas
Insurance Code Article 21.55. 

 

 

 

/s/        Charles
W. Seymore

Justice

 

Judgment rendered and
Opinion filed August 23, 2007.

Panel consists of Chief
Justice Hedges and Justices Yates and Seymore.

 









[1]  The basic elements of a bailment are: (1) delivery
of personal property by one person to another in trust for a specific purpose;
(2) acceptance of such delivery; (3) an express or implied contract that the
trust will be carried out; and (4) an understanding under the terms of the
contract that the property will be returned to the transferor or dealt with as
the transferor directs.  Yoakum Grain Inc. v. Energy Indus., Inc., 511
S.W.2d 95, 98 (Tex. App.CCorpus Christi 1974); 8A Tex. Jur. 3d, Bailments ' 3 (2007).